**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, et al.;<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.;<br><br>*Defendants*. | Case No. 1:26-cv-02886 (AHA) |

# DECLARATION OF PAUL ADAMS

Elections Administrator of Dallas County, Texas

I, Paul Adams, pursuant to 28 U.S.C. § 1746, declare as follows:

## I. Background

1. I am the Elections Administrator of Dallas County, Texas. In my role as the Dallas County Election Administrator, I act as the voter registrar, the early voting clerk, custodian of election records, department head of the Dallas County Elections Department (Department), and manage the overall administration of elections conducted in Dallas County including elections for statewide and federal offices, countywide offices, cities, school districts, local political subdivisions, and political party primaries.

## II. The Election Conditions and Dallas County Practices

2. Dallas County participates in the County-wide polling location program, which under the Texas Election Code allows any voter in Dallas County to vote at any location during early voting or election day regardless of their assigned election precinct.

3. I am aware that the Fiscal Year 2026 Homeland Security Grant Program (HSGP) Notice of Funding Opportunity (NOFO) and related FEMA guidance contain five new Election Conditions with which the County will need to comply to receive all of its HSGP funding.

4. These conditions include the following, U.S. Dep't of Homeland Sec., *Notice of Funding Opportunity (NOFO): Fiscal Year 2026 Homeland Security Grant Program* at 15-16 (internal footnotes omitted):

(1) "Submit a transition plan: Submit a plan for transitioning from electronic voting systems that utilize bar codes or QR codes to count votes to equipment that accepts hand-marked paper ballots. The plan, for all jurisdictions currently using such systems, must include a timeline and, if necessary, a funding request to eliminate ballot marking devices and utilize hand-marked paper ballots."

(2) "Post-election manual audit: Demonstrate proof of compliance with a post-election 5% manual audit, conducted according to the guidelines established by the Secretary, to ensure that electronic voting systems accurately count votes."

(3) "Voter/ballot reconciliation: Ensure that each election jurisdiction reconciles the number of voters who voted in each federal election to the number of ballots cast, using the methodology established by the Secretary."

(4) "Voter roll citizenship verification: Utilize the U.S. Citizenship and Immigration Services' Systematic Alien Verification for Entitlements (SAVE) system to verify the citizenship of all individuals in the state voter registration database within 120 days of accepting the grant award. To mitigate operational vulnerabilities exploitable by terrorist or foreign actors and advance HSGP counterterrorism objectives, the State's chief election official must take timely corrective action, consistent with applicable law, to remove verified non-U.S. citizens from the database."

(5) "Election worker citizenship verification: Utilize the SAVE system, or another authorized government system, to verify U.S. citizenship for any person working at a polling place in any capacity, or operating any election system in the jurisdiction, including temporary agency workers and vendors who work on or with election systems. To prevent sabotage, infiltration, or foreign interference, the State's chief election official must ensure verified non-U.S. citizens are prohibited from operating election systems or working at polling places, consistent with applicable law, thereby hardening critical infrastructure under HSGP."

5. Additionally, FEMA, Grant Programs Directorate Information Bulletin No. 580 (Aug. 10, 2026) at page 2 footnote 1 it states the following: "Where the functionality of SAVE is impacted by the June 22, 2026 order in **League of Women Voters v. DHS**, Civ. Action No. 25-3501, while on appeal, treat the following as controlling: For any person registered to vote but for whom the state does not have records of citizenship, the state may resolve this uncertainty by submitting relevant information to USCIS for an immigration records search consistent with the requirements of 8 U.S.C. § 1373."

6. To implement the County-wide polling location program, Dallas County's current Election System & Software (ES&S) electronic voting system utilizes ballot marking devices that are pre-programmed with different ballot styles to accommodate the multiple local governmental entities that conduct elections within Dallas County. This system allows any voter to present themselves at any polling location and to be assigned a blank ballot that is programmed to present their applicable races and propositions for their jurisdiction on the ballot marking device for selection. The electronic voting system utilizes a bar code for the ballot marking device to read the ballot style as well as to print the results on the ballot that can be read and counted by the electronic voting system tabulators. The ES&S electronic voting system used by Dallas County has been certified for use by the Texas Secretary of State in accordance with Chapter 122 of the Texas Election Code.

7. As required by the HSGP FY 2026 grant, in order to adopt a hand marked paper ballot system, within the County-wide polling location program, Dallas County would have to procure hundreds of ballot on demand printers. The ballot on demand printers are necessary to print individualized ballots that can then be hand-marked by the voter. In addition, my Department would have to procure and deliver ample ballot stock to each polling location to accommodate printing of ballots on site.

8. The ballot stock needed to accommodate a ballot on demand system would require more paper in terms of size, weight, and overall volume to be delivered to each of the 400 plus election day polling locations for a November election. Thus, my Department would incur additional costs not only for the procurement of the ballot on demand paper stock but also for the additional personnel time to deliver the ballot stock to each of the 400 plus election day polling

locations. If a location runs out of paper stock for ballots, I am obligated under Section 51.008(e) of the Texas Election Code to promptly supplement ballots upon request of a polling location. If I fail to do so, it is a Class A misdemeanor.

9. Regarding the ballot on demand printers, Dallas County received an estimate for the potential procurement of such printers. That quote was for 1450 printers at a cost of $ 7.25 million. Because this amount exceeds $100,000.00, my Department is mandated by Local Government Code Section 262.023(a) to competitively bid the procurement of ballot on demand printers. A competitive bid process in Dallas County requires an extensive internal process involving but not limited to the Dallas County Purchasing, Human Resources, Information Technology, Small Business Enterprise (SBE) and the District Attorney's Office – Civil Division to collaborate on the scope and details before a Request for Proposal (RFP) can be released to vendors. As such, formulating the final RFP would take several months before it is released.

10. Once the RFP is released, vendors are typically given at least 1-3 months to submit their proposals. All responses from each vendor must be carefully reviewed and evaluated before a vendor is chosen. After awarding the bid, the County and the vendor must engage in contract negotiations before presenting a final contract to the Dallas County Commissioners Court for approval. From the start until contract execution and full delivery of the ballot on demand printers, it would be an estimated 6-9 months.

11. Once the contract is approved and the printers are delivered, my Department will then have to learn how to use the printers and formulate training materials and classroom instructions to train several thousand election judges, clerks, and other election officials on the use of the printers to process voters during early voting and on election day.

12. Due to these lengthy requirements, it would be infeasible to procure the necessary equipment, and train election poll workers on the updated procedures before the end of the 2027 election cycle.

13. Any election held in Dallas County after August 31, 2026, will be subject to a risk-limiting audit in accordance with Chapter 127 Subchapter I of the Texas Election Code. In accordance with Sections 127.302(b) and 127.303 of the Texas Election Code, the Texas Secretary of State is responsible with selecting the precincts to be counted and the offices or propositions to be counted as well as setting the rules and procedures for implementation of the risk-limiting audit under Chapter 127 Subchapter I of the Texas Election Code. Thus, current Texas state law does

not allow me to set any percentage requirements in regard to any state or federally mandated post-election manual recounts. In addition, I have not been made aware of nor given any notice from the Texas Secretary of State regarding the implementation of a five (5%) percent post-election manual audit as required under the HSGP.

14. Currently my Department has no access to the U.S. Citizenship and Immigration (USCIS) Systematic Alien Verification for Entitlements (SAVE) system. The Texas Secretary of State (SOS) has not provided any recent guidance that would require me as the voter registrar to check the citizenship of all Dallas County registered voters in the SAVE system. Nor has the SOS provided me or my Department with access to the SAVE system.

15. The Texas Election Code and the guidance from the SOS (received October of 2025) does not mandate that I verify citizenship of every registered voter in Dallas County through the SAVE system. In its October 2025 communication to the state election officials, the SOS states, "The process for this list maintenance activity is largely the same as the process outlined in Election Advisory No. 2021-11: List Maintenance Activity Involving Potential Non-United States Citizens." In its Election Advisory No. 2021-11, the SOS directs voter registrars to process lists of potential non-citizen registered voters as follows: ". . .any records sent to you through the revised process must satisfy one or more strict matching criteria. However, all of these records must be treated as weak matches. This means that you may not immediately cancel any voter's registration simply because they are identified as a potential non-U.S. citizen in the initial file or a weekly file."

16. Dallas County currently verifies the U.S. citizenship of most election poll workers by verifying that the election poll worker is a registered voter in Dallas County. In the State of Texas, a registered voter must be a U.S. Citizen and must acknowledge their U.S. Citizenship on their voter registration application. The only exception to this verification process is for our student poll workers who are 16 and 17 years of age and thus not eligible to register to vote. However, Texas Election Code Section 32.0511(b)(2)(B) requires that student poll workers be U.S. Citizens.

17. As stated above, my Department has no access to the SAVE system, nor have we received any guidance from the SOS directing me or my Department to verify the U.S. Citizenship status of our election poll workers other than the methods stated above in accordance with the Texas Election Code.

18. If my Department was given access to the SAVE system and directed by the SOS to review the citizenship status of both registered voters and election poll workers, such a task would create operational constraints on my current staff. Without the ability to hire additional temporary staff, it would be improbable for me and my Department to complete those citizenship checks within the 120-day deadline.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 1, 2026, in Dallas, Texas.

**/S/ Paul Adams**
**Paul Adams**