**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*<br><br>*Defendants*. | Case No. 26-CV-2886 |

**DECLARATION OF KENNETH S. BYRD**

I, Kenneth S. Byrd, declare as follows:

1. This declaration is based on my own personal knowledge, experience, and review of relevant business records and other sources within the Davidson County Election Commission ("DCEC"). If I were called to testify as a witness, I could and would testify competently to the truth of the matters discussed in this declaration.

2. I currently serve as one of five Election Commissioners on the DCEC. I have held this position since April 7, 2025. Among other duties, I work with four other commissioners to help promote the electoral process and the work of the DCEC pursuant to Tenn. Code Ann. § 2-12-101, et. seq.

3. The DCEC is responsible for conducting all elections in Davidson County, Tennessee, which has more than 700,000 residents and approximately 471,000 active and inactive registered voters. The DCEC is funded primarily by the Metropolitan Government of Nashville and Davidson County ("Nashville") pursuant to Tenn. Code Ann. § 2-12-109.

4. I am aware that the FY 2026 HSGP Notice of Funding Opportunity and related FEMA guidance contain five new Election Conditions with which Nashville will need to comply with to receive all of its Homeland Security Grant Program funding.

5. These conditions include: (1) “Submit a transition plan: Submit a plan for transitioning from electronic voting systems that utilize bar codes or QR codes to count votes to equipment that accepts hand-marked paper ballots. The plan, for all jurisdictions currently using such systems, must include a timeline and, if necessary, a funding request to eliminate ballot marking devices and utilize handmarked paper ballots.”; (2) “Post-election manual audit: Demonstrate proof of compliance with a post-election 5% manual audit, conducted according to the guidelines established by the Secretary, to ensure that electronic voting systems accurately count votes.”; (3) “Voter/ballot reconciliation: Ensure that each election jurisdiction reconciles the number of voters who voted in each federal election to the number of ballots cast, using the methodology established by the Secretary.”; (4) “Voter roll citizenship verification: Utilize the U.S. Citizenship and Immigration Services’ Systematic Alien Verification for Entitlements (SAVE) system to verify the citizenship of all individuals in the state voter registration database within 120 days of accepting the grant award. To mitigate operational vulnerabilities exploitable by terrorist or foreign actors and advance HSGP counterterrorism objectives, the State's chief election official must take timely corrective action, consistent with applicable law, to remove verified non-U.S. citizens from the database.” (and “Where the functionality of SAVE is impacted by the June 22, 2026, order in *League of Women Voters v. DHS*, Civ. Action No. 25-3501, while on appeal, treat the following as controlling: For any person registered to vote for whom the state does not have records of citizenship, the state may resolve this uncertainty by submitting relevant information to USCIS for an immigration records search consistent with 8 U.S.C. § 1373.”); and (5) “Election worker citizenship verification:

Utilize the SAVE system, or another authorized government system, to verify U.S. citizenship for any person working at a polling place in any capacity, or operating any election system in the jurisdiction, including temporary agency workers and vendors who work on or with election systems. To prevent sabotage, infiltration, or foreign interference, the State's chief election official must ensure verified non-U.S. citizens are prohibited from operating election systems or working at polling places, consistent with applicable law, thereby hardening critical infrastructure under HSGP." U.S. Dep't of Homeland Sec., *Notice of Funding Opportunity (NOFO): Fiscal Year 2026 Homeland Security Grant Program* at 15-16 (internal footnotes omitted); FEMA, Grant Programs Directorate Information Bulletin No. 580 (Aug. 10, 2026).

6. The DCEC does not solely utilize hand-marked paper ballots. Currently, voters in Davidson County use touchscreen ballot marking devices ("BMD") that record their voting selections. After completing the ballot, voters are required to review and confirm their voting selections. After confirmation, the BMD prints the voting selections in both barcodes and human-readable text on a ballot card. The human-readable text allows voters a final chance to confirm that their ballot matches their voting intent. Voters then feed their individual ballot card into a scanner that reads the barcodes and tabulates the voting selections.

7. Hand-marked paper ballots would unnecessarily complicate and degrade our voting system. First, unlike hand-marked paper ballots, the touchscreen BMDs allow those with disabilities to vote independently. For example, because the touchscreen is electronic, it can be modified to increase font size or provide high-contrast text (i.e., white text on a black screen). Further, the machines can provide audio transmission of the ballot as well as connect with sip and puff devices for voters with movement issues. Second, hand-marked paper ballots are susceptible to human error and variation when being marked and

interpreted. For example, if a voter makes a mistake on a hand-marked paper ballot, a new ballot is likely required. The BMDs, however, allow a voter to seamlessly change a vote prior to printing without requiring a new ballot. Additionally, on a hand-marked ballot, voters may make accidental marks (e.g., an errant scribble), not completely fill in an oval, fill in ovals for more than one candidate, or use a different marking indicator (e.g., circle a selection or place a check mark next to it) that would confuse a scanner, leading to delays in a user session.

8. Transitioning to hand-marked paper ballots, which appears to be the end goal of the transition plan required by the NOFO, would require an expenditure of funds by Nashville. For example, there are currently 178 precincts in Davidson County with 265 scanners distributed among them on election day, the busier precincts having more scanners. Given the potential for voter-user error (e.g., voting for more than one candidate in a race, errant scribble, incomplete oval, circled selection, etc.), hand-marked paper ballots result in longer user sessions and introduce the possibility of recording incorrect or unusable votes. The DCEC would likely need to acquire additional scanners, at Nashville's expense, to maintain the current level of service currently provided. Further, a transition to hand-marked ballots would require the DCEC to purchase ballots, at Nashville's expense, for each registered voter plus an overrun amount to account for errors, damaged ballots, etc. Voter turnout, unfortunately, is never at 100%. For example, Davidson County's most recent election took place on August 6, 2026. Approximately 91,000 (ninety-one thousand) voters participated, representing approximately 19% of registered active and inactive voters. In this scenario, approximately 400,000 hand-marked paper ballots would have been made, secured, and later destroyed. On the other hand, unused ballot cards may be repurposed in future elections. Additionally, the DCEC would have to train its employees and its poll workers (each group paid by Nashville funds) and the voters on how to use

hand-marked paper ballots, which would require both time and expense. For example, current training manuals and videos would be obsolete, and new ones would have to be created. And finally, though each precinct would need to maintain at least one BMD to assist voters with disabilities, the others would no longer serve a purpose, and the carts they rest on would have to be converted to "table top" format to allow voters to physically mark hand-marked ballots.

9. The DCEC's post-election audit practices would also change under the NOFO's requirement of a manual audit of paper ballots in at least 5% of the precincts in our jurisdiction. Currently, pursuant to the system set forth in Tennessee Code Annotated § 2-20-103, the DCEC randomly selects five ballot boxes from the 178 precincts after each August and November election. Those locked and sealed boxes are taken to a ballot vault and not opened until the public audit begins. The ballots from each box are then run through a different scanner from the one used to originally tabulate the vote. The most recent audit was conducted on August 13, 2026, which addressed the August 6, 2026 state and federal election. The audit results perfectly matched the original results. There were zero errors.

10. Implementing the 5% manual audit required by the NOFO would require Nashville to audit at least nine precincts, nearly twice the current number. The August 13 audit of the August 6 election, in which only approximately 19% of registered voters participated, involved seven to eight employees plus a quorum of the five election commissioners and took an entire day to conduct. By its nature, a hand recount of hand-marked paper ballots would take substantially longer to conduct than running ballot cards through a scanner. Further, presidential elections, for example, generally see a much higher turnout percentage, thereby increasing the number of ballots in a ballot box.

Implementing the NOFO requirement would require more staff time, likely including overtime pay.

11. The DCEC does not utilize the SAVE system to verify the citizenship of registered voters, nor does it submit information to USCIS for an immigration records search, as required by the NOFO. Verifying registered voters through SAVE within 120 days of Nashville accepting the HSGP awards would likely incur a financial cost to Nashville.

12. Further, pursuant to state law, all poll workers who are eighteen years of age or older must be registered voters and, therefore, citizens. Tenn. Code Ann. § 2-4-103. The DCEC does not utilize the SAVE system to verify the citizenship of election workers or vendors, as would be required by the NOFO. Doing so would be largely duplicative and unnecessary. All poll workers complete an I-9 form. Verifying these individuals through SAVE would likely incur a financial cost to Nashville.

13. The DCEC includes an amazing staff of individuals who have an impeccable record of overseeing fair and impartial elections with the utmost integrity and highest safeguards. Moreover, throughout any given year, the staff are often bombarded with large meticulous and unexpected tasks on short notice, such as local ballot initiatives or new state legislative demands and/or requirements. For example, on the eve of the August 6, 2026 state and federal primary elections, the supermajority in the Tennessee General Assembly redrew the federal congressional districts, which meant countless hours of DCEC time, overtime and resources that had not been expected or planned. If the federal government imposes the unnecessary mandates set forth in paragraph 5 above, the DCEC would undoubtedly have to hire more staff and equipment at the expense of Nashville and ultimately its taxpayers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2026

*/s/* Kenneth S. Byrd
Kenneth S. Byrd
Election Commissioner
Davidson County Election Commission