**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, et al.;

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.;

*Defendants*.

Case No. 1:26-cv-02886 (AHA)

**DECLARATION OF TENESHIA HUDSPETH, COUNTY CLERK FOR HARRIS COUNTY, TEXAS**

I, Teneshia Hudspeth, declare as follows:

## I. Background

1. I currently serve as County Clerk for Harris County, Texas (the "County"). I have held this position since 2020.

2. As County Clerk, I serve as the Chief Election Official for Harris County and am responsible for conducting and overseeing elections in Harris County. I work closely with federal, state, and local officials to coordinate and conduct elections in Harris County under the guidance of the Texas Secretary of State. As County Clerk, I do not manage the voter rolls or the voter registration process.

3. Since 2005, I have served in various roles within the Harris County Clerk's elections department, including the Voter Outreach and Communications division, was promoted to Chief Deputy in 2019, and ultimately elected County Clerk in 2020.

4. Harris County is the nation's third-largest county by population, with over 4.8 million residents as of the last census, or over one in every six residents of the State of Texas. If Harris County were a state, it would be the 25th largest state in the country. As of July 29, 2026, the County has 2,748,714 registered voters. It is home to the most diverse population and electorate in Texas. More than 145 languages are spoken in Harris County. It has 1,224 voting precincts.

5. The County follows all applicable federal and state laws to protect the security and accuracy of the election process.

6. The County follows current audit and reconciliation processes that are required by Texas law. Texas law requires a post-election hand count audit of certain ballots that were electronically tabulated, with the polling locations, precincts, and contests to be audited in accordance with Texas Election Code §127.201. Texas law also requires the post-election reconciliation of all votes cast and total number of voters accepted per Texas Election Code § 66.005.

7. The Harris County Clerk's Office is not responsible for verifying the citizenship status of voters and does not have access to the Systematic Alien Verification for Entitlements (SAVE) program.

8. The Texas Election Code requires that all election workers be registered voters.

9. Texas law does not require election officials to verify the citizenship status of vendors' employees, and the County Clerk's Office does not have the means or resources to do so. Harris County relies on vendors, including a voting equipment vendor certified by the state, a vendor that provides field technicians that are trained by the County Clerk's Office and are deployed to vote centers to provide technical support to election judges, a vendor that manages the current election management system, and a vendor that is certified by the state and manages the

County's epollbook software and development. Requiring election officials to verify the citizenship status of vendors' employees would require funding and additional personnel to manage that process.

## II. The Election Conditions and County Practices

10. I am aware that the Fiscal Year 2026 Homeland Security Grant Program (HSGP) Notice of Funding Opportunity (NOFO) and related FEMA guidance contain five new Election Conditions with which the County will need to comply to receive all of its HSGP funding.

11. These conditions include the following, U.S. Dep't of Homeland Sec., *Notice of Funding Opportunity (NOFO): Fiscal Year 2026 Homeland Security Grant Program* at 15-16 (internal footnotes omitted); FEMA, Grant Programs Directorate Information Bulletin No. 580 (Aug. 10, 2026):

a. (1) "Submit a transition plan: Submit a plan for transitioning from electronic voting systems that utilize bar codes or QR codes to count votes to equipment that accepts hand-marked paper ballots. The plan, for all jurisdictions currently using such systems, must include a timeline and, if necessary, a funding request to eliminate ballot marking devices and utilize handmarked paper ballots."

b. (2) "Post-election manual audit: Demonstrate proof of compliance with a post-election 5% manual audit, conducted according to the guidelines established by the Secretary, to ensure that electronic voting systems accurately count votes."

c. (3) "Voter/ballot reconciliation: Ensure that each election jurisdiction reconciles the number of voters who voted in each federal election to the number of ballots cast, using the methodology established by the Secretary."

d. (4) "Voter roll citizenship verification: Utilize the U.S. Citizenship and Immigration Services' Systematic Alien Verification for Entitlements (SAVE)

system to verify the citizenship of all individuals in the state voter registration database within 120 days of accepting the grant award. To mitigate operational vulnerabilities exploitable by terrorist or foreign actors and advance HSGP counterterrorism objectives, the State's chief election official must take timely corrective action, consistent with applicable law, to remove verified non-U.S. citizens from the database." In addition: "To the extent that the functionality of the SAVE system has been impacted by the June 22, 2026 order in the League of Women Voters v. U.S. Department of Homeland Security, Civ. Action No. 25-3501, while on appeal, for any person who is registered to vote but for whom a State does not have records of citizenship, the State may resolve this uncertainty by submitting relevant information to USCIS for an immigration records search consistent with the requirements of 8 U.S.C. § 1373."

e. (5) "Election worker citizenship verification: Utilize the SAVE system, or another authorized government system, to verify U.S. citizenship for any person working at a polling place in any capacity, or operating any election system in the jurisdiction, including temporary agency workers and vendors who work on or with election systems. To prevent sabotage, infiltration, or foreign interference, the State's chief election official must ensure verified non-U.S. citizens are prohibited from operating election systems or working at polling places, consistent with applicable law, thereby hardening critical infrastructure under HSGP."

12. The County Clerk's Office works closely with various partners to ensure election security and integrity. Partners include local law enforcement agencies, the Harris County Commissioners Court, the Harris County Attorney's Office, and Harris County Universal Services, which is a department of the County responsible for cybersecurity protections and resources.

13. As described below, complying with the federal government's new election requirements would mean that the County would not be able to meet current requirements set forth by the Texas Election Code. The County would also incur significant costs in complying with the requirements.

14. The County does not solely utilize hand-marked paper ballots. Harris County currently utilizes the Hart Verity voting system. Voters make their selections using Verity voting devices, which produce a voter-verifiable paper vote record reflecting the voter's selections. After reviewing the printed vote record, the voter deposits it into a Verity scanner for tabulation. Utilizing these ballot-marking devices provides for fewer overvotes, makes it easier to provide different ballot styles, and is more accessible to voters of different abilities.

15. Transitioning Harris County to hand-marked paper ballots, which is the end goal of the transition plan required by the NOFO, would cost millions of dollars and require the acquisition of additional equipment, increased election staffing, and significant changes to existing election procedures and training. Creating a plan to transition to such a system would impose significant costs on Harris County, requiring the County to divert significant amounts of money and the valuable time and efforts of county personnel.

16. The burdens and harms that the County would incur from complying with the hand-marked paper ballot requirement include: retiring existing ballot marking devices and scanners; acquiring vote center-based optical printers and scanners configured to read ovals/bubbles; acquiring ballot on-demand printers to accommodate different ballot styles; incurring additional ballot printing costs; hiring and training additional election workers; redesigning ballots for hand-marking (and complying with language requirements); obtaining requisite testing and certification of new machinery; taking additional time to count ballots (including bipartisan review boards for

manual determination if a scanner cannot read a hand-marked ballot); breaking vendor contracts and risking litigation from that; piloting the new system before rollout; and public education about the system.

17. Even obtaining and providing the inputs for developing the transition plan would impose significant costs on Harris County, requiring the County to divert significant amounts of money and the valuable time and efforts of County personnel to collect and compile the necessary information. Assisting the state in collecting the information required for the transition plan would require the County to expend significant man-hours and resources to gather the necessary data and cost estimates to provide to the state.

18. Moreover, Texas law requires that counties finish counting regular ballots within twenty-four hours of the polls closing on Election Day. Texas Election Code § 66.053. Harris County—the most populous county in Texas—would not be able to meet this statutory deadline using exclusively hand-marked paper ballots that cannot be tabulated using current systems.

19. The County's post-election audit practices would also need to change under the NOFO's requirement of a manual audit of paper ballots in at least 5% of the precincts in our jurisdiction and of at least 5% of all centrally tabulated batches in our jurisdiction.

20. Currently, Harris County complies with Texas's existing post-election hand count audit requirements. Texas law requires a post-election hand count audit of certain ballots that were electronically tabulated, with stipulations governing which and how many polling locations, precincts, and contests are included in that audit. Texas Election Code § 127.201. Texas law also requires Harris County to complete this audit by a statutorily prescribed deadline that typically falls either twenty-one or thirty days after Election Day, depending on the election type. Under Texas law, Harris County may only add additional polling locations to this audit "in accordance

with procedures prescribed by" the Texas Secretary of State. *Id.* In turn, the Texas Secretary of State has placed limits on the number of polling locations that a county may add to the audit, absent a discrepancy, and imposed requirements on the manner in which those locations may be added. *Id.*; Election Advisory No. 2025-21, Texas Secretary of State, https://www.sos.state.tx.us/elections/laws/advisory2025-21.shtml.

21. Implementing the 5% manual audit required by the NOFO would significantly expand the scope of the County's existing post-election audit obligations and would require substantial additional personnel, time, and other resources, potentially interfering with Harris County's ability to fulfill its audit obligations under state law. Harris County anticipates that conducting a manual audit of that magnitude would take approximately three to four months. The County Clerk's Office would need to hire approximately 300 election workers to conduct the audit, resulting in an approximate cost of $3,840,000.

22. The NOFO's reconciliation requirement would similarly require the addition of significant resources to identify and understand the cause of any discrepancies. There are several valid reasons why the number of ballots used may differ from the number of voters, such as spoiled or damaged ballots. The County Clerk's office would need to hire additional personnel dedicated to doing this each day during voting. Further, Harris County already complies with reconciliation requirements imposed by Texas law. *See* Texas Election Code § 127.131.

23. With respect to the NOFO's "voter roll citizenship verification" requirements, the County Clerk's Office is not involved in the voter roll or voter registration process. The Harris County Tax Assessor-Collector and Voter Registrar's Office is responsible for the voter rolls and voter registration in Harris County. The Harris County Clerk's Office does not utilize the SAVE

system to verify the citizenship of registered voters, nor does it submit information to USCIS for an immigration records search, as would be required by the NOFO.

24. Concerning the NOFO's "election worker citizenship verification" requirements, the County does not utilize the SAVE system to verify the citizenship of election workers, as would be required by the NOFO. The Texas Election Code requires that all election workers be registered voters.

25. The County does not utilize the SAVE system to verify the citizenship of employees of vendors who work on election systems, as would be required by the NOFO. Texas law does not require election officials to verify the citizenship status of vendors' employees, and the County Clerk's Office does not have the means or resources to do so. Requiring election officials to verify the citizenship status of vendors' employees would require funding and additional personnel to manage that process.

26. Verifying the citizenship of "any person who works at a polling place; or who operates any election system in the jurisdiction, including temporary agency workers and vendors who work on or with election systems," August 10 Guidance at 5–6, would impose still more burdens on Harris County. There is no existing process for running poll workers through the SAVE system. Poll workers are already required to be registered voters under state law. Furthermore, Texas law requires that each election precinct's presiding election judge "appoint the election clerks to assist the judge in the conduct of an election at the polling place served by the judge." Texas Election Code § 32.031. The presiding judge must select election clerks from lists submitted by the county chairs of the two major political parties in each county. *Id.* § 32.034. Election clerks must be qualified voters, but the Texas Election Code does not provide for direct county oversight of the lists submitted by the political parties or of a presiding judge's selection of election clerks

from those lists. The Texas Legislature would need to change Texas law to provide the County with that authority. Exercising that authority prior to each election would impose significant costs on the County in terms of money and manpower. The County cannot compel the Texas Legislature or any other decisionmakers outside of its control to take steps towards implementing the new Election Conditions.

27. The NOFO's citizenship verification requirement extends beyond poll workers to include temporary agency workers and vendors who "work on or with election systems." This would require the County to incur significant costs in order to create and implement an entirely new system of ensuring that temporary agencies and third-party vendors employ only U.S. citizens, not just individuals who are authorized to work in the United States.

*(Signature on following page.)*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2026.

Teneshia Hudspeth
County Clerk
Harris County, Texas