**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT**

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, et al.;

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.;

*Defendants*.

Case No. 1:26-cv-02886 (AHA)

**DECLARATION OF LISA WISE, ELECTIONS ADMINISTRATOR FOR EL PASO COUNTY, TEXAS**

I, Lisa Wise, declare as follows:

## I. Background

1. I currently serve as Elections Administrator for El Paso County. I have held this position since April 13, 2015.

2. I oversee the complete federal, state, and county election process, including: voter-registration management, ballot preparation, poll-worker recruitment and training, polling-location coordination, early-voting and election-day operations, Ballot By Mail, geographical information systems, and post-election reporting, certification and retention.

3. I contract with political subdivisions within the County to run their elections and am responsible for complying with federal, state and local election laws.

4. I previously served as the Deputy Election Commissioner for Douglas County, Nebraska. I held that position from May 2006 through August 2014.

5. El Paso County is a multicultural and geographically distinct county. It is home to more than 800,000 residents, more than 82 percent of whom are Hispanic and more than 68 percent of whom speak a language other than English at home. It is the westernmost county of Texas and part of the largest border community on the Rio Grande.

6. The County follows all applicable federal and state laws to protect the security and accuracy of the election process. El Paso County uses ballot marking devices with barcodes for in-person voters. El Paso County currently follows and complies with the reconciliation procedures and post-election manual audit that are required by state law (if applicable); However, the sample size is currently significantly less than 5%. The audit sample is set by the Texas Secretary of State by selecting three random Early Voting Sites, Election Day Sites and then three precincts for Ballot By Mail. In late 2025, the Texas Secretary of State ran its entire list of registered voters through the federal Systematic Alien Verification for Entitlements (SAVE) and shared lists of potential noncitizens with local election administrators. El Paso County complied with the State requirement to send notification to those names produced as "possible" non-citizens by the SAVE list received in 2025. El Paso County does not specifically verify the citizenship status of poll workers using the SAVE list, but our poll workers who process voters are themselves registered voters and have been verified as citizens through the voter registration process. El Paso County does not verify citizenship of the employees of voting system vendors.

## II. The Election Conditions and County Practices

7. I am aware that the FY 2026 HSGP Notice of Funding Opportunity and related FEMA guidance contain five new Election Conditions with which the County will need to comply to receive all of its HSGP funding.

8. These conditions include: (1) "Submit a transition plan: Submit a plan for transitioning from electronic voting systems that utilize bar codes or QR codes to count votes to equipment that accepts hand-marked paper ballots. The plan, for all jurisdictions currently using such systems, must include a timeline and, if necessary, a funding request to eliminate ballot marking devices and utilize hand marked paper ballots."; (2) "Post-election manual audit: Demonstrate proof of compliance with a post-election 5% manual audit, conducted according to the guidelines established by the Secretary, to ensure that electronic voting systems accurately count votes."; (3) "Voter/ballot reconciliation: Ensure that each election jurisdiction reconciles the number of voters who voted in each federal election to the number of ballots cast, using the methodology established by the Secretary."; (4) "Voter roll citizenship verification: Utilize the U.S. Citizenship and Immigration Services' Systematic Alien Verification for Entitlements (SAVE) system to verify the citizenship of all individuals in the state voter registration database within 120 days of accepting the grant award. To mitigate operational vulnerabilities exploitable by terrorist or foreign actors and advance HSGP counterterrorism objectives, the State's chief election official must take timely corrective action, consistent with applicable law, to remove verified non-U.S. citizens from the database." (and "To the extent that the functionality of the SAVE system has been impacted by the June 22, 2026 order in the League of Women Voters v. U.S. Department of Homeland Security, Civ. Action No. 25-3501, while on appeal, for any person who is registered to vote but for whom a State does not have records of citizenship, the State may resolve this uncertainty by submitting relevant information to USCIS for an immigration records search consistent with the requirements of 8 U.S.C. § 1373."); and (5) "Election worker citizenship verification: Utilize the SAVE system, or another authorized government system, to verify U.S. citizenship for any person working at a polling place in any capacity, or operating any election system in the jurisdiction, including temporary agency

workers and vendors who work on or with election systems. To prevent sabotage, infiltration, or foreign interference, the State's chief election official must ensure verified non-U.S. citizens are prohibited from operating election systems or working at polling places, consistent with applicable law, thereby hardening critical infrastructure under HSGP.". U.S. Dept. of Homeland Sec., *Notice of Funding Opportunity (NOFO): Fiscal Year 2026 Homeland Security Grant Program* at 15-16 (internal footnotes omitted); FEMA, Grant Programs Directorate Information Bulletin No. 580 (Aug. 10, 2026).

9. El Paso County is committed to conducting secure elections. We utilize best practices and comply with all federal, state and local election laws, providing multiple layers of security to ensure the integrity of our elections. The County does not solely utilize hand-marked paper ballots. The County uses ballot marking devices which encode ballot information in a barcode for the tabulator to read. Ballot-marking devices are required by law for differently abled voters. Voters who require audio ballots, larger font, or use of sip and puff equipment to fill out their ballot must be given an onsite option to vote independently. This system offers the most adaptability to support all voters regardless of ability in casting their ballots. This system also supports the county's county-wide polling place program by allowing all our 60-plus ballot styles to be accessed at all Election Day and Early Voting Sites. This provides for voters registered anywhere in the county to vote at the location most convenient for them.

10. Transitioning to hand-marked paper ballots, which is the end goal of the transition plan required by the NOFO, would cost several million dollars. The process for creating specifications, drafting a request for proposals, reviewing bids, purchasing, delivering, and implementing a new system generally takes 12-18 months.

11. The County received a quote from one vendor, ES&S, which estimated the cost of printers alone to be $3 million. The County would expect an additional $700,000 in associated, paper, toner, tabulators, carts, and training costs. The County would also expect printing an on-demand ballot to take 30 seconds to 1 minute per ballot, which is up to 10 times the amount of time it currently takes. This change could force the County to hire additional workers and buy additional equipment to avoid long delays at polling places. The County would also remain concerned that because the optical scanner would still review marked ballots, there is a possibility for mis-marking or circling which can either create a large number of undervotes (when voters circle candidates or check candidates' names creating marks outside the ovals and the optical scanner does not recognize a selection was made), or increase the number of ballots that must be duplicated and brought to the ballot boards (the local officials that review ballots marked in such ways to determine how they should be tabulated). Additionally, when these printed ballots are double sided or longer, there is also a higher risk of jam when individuals try to submit the ballot.

12. Additionally, if the County were to contract with a new voting machines vendor the County would continue to retain the existing Express Vote machines for Americans with Disabilities Act compliance, because the new voting machines would not be able to serve the needs of voters with disabilities, such as a sip and puff or audio reader options.

13. Even the inputs for the transition plan would burden the county by requiring all workers to be verified prior to Election Day. In addition, the time and resources to prepare reports, timelines and fiscal impacts would be burdensome.

14. The County's post-election audit practices would also need to change under the NOFO's requirement to manually audit paper ballots in at least 5% of the precincts in our

jurisdiction and of at least 5% of all centrally tabulated batches in our jurisdiction. Currently, El Paso County follows and complies with the reconciliation procedures and post-election manual audit that are required by state law. However, the sample size is currently significantly less than 5% in a countywide large election such as the 2024 Presidential Election. For the March Primary Election, we manually counted approximately 6,800 ballots during the post election audit. If we had been under the 5% requirement for the November 2024 Presidential Election, we would have been responsible for manually counting approximately 12,800 ballots. This process would take twice as long as it currently takes us assuming the audit would be done similarly using only 3 of the races on the ballot. If the audit calls for more races, it would take even more time and ballot board members. The audit sample is set by the Texas Secretary of State by selecting three random Early Voting Sites, Election Day Sites and then three precincts for Ballot-By-Mail.

15. The cost and timeline for implementing the 5% manual audit required by the NOFO are currently unknown because the scope of the audit is unclear. Currently, the County conducts the state required audit using 3 Early Voting and Election Day Sites as well as 3 precincts for Ballot By Mail. The Texas Secretary of State limits the scope of that audit to 3 races on the ballot. If we were to conduct a 5% audit of an upcoming Presidential Election, for example, that could be close to 16,000 ballots with most ballots containing close to 30 races. An audit with such increased scope will impose additional costs in resources and time on the county. Neither the Secretary of State nor DHS have given sufficient information to determine whether this audit would be in addition to the current post election hand count or the risk limiting audit.

**16.** Regarding requirements to reconcile the numbers of voters with the numbers of ballots cast, the County already compares several reports, which takes only a few hours. The

County compares number of voters checked in on our electronic poll pads with number of ballots cast in our election management system report. This is a standard procedure for reconciling these numbers. We also review the ballot by mail report and provisional report. Meeting the NOFO's reconciliation requirements, including the requirement to create a static list of each participating voter, would impose additional costs on the county if some additional remedy is required when the reconciliation is off by more than a certain percent. The County may also lose election workers if more work is required or if there is a penalty for counts that are off by more than a certain percent.

17. The County does utilize the SAVE system to verify the citizenship of registered voters, but it does not submit information to USCIS for an immigration-records search, as required by the NOFO. The County received a list of "possible" noncitizens from the state in October of 2025. Those registered voters were sent examination notifications as required by the Texas Election Code. This summer, we were informed that the list was flawed and that this list should not be used to cancel voters from the voter registration rolls. Using a flawed list to cancel voters from the registration rolls could result in eligible voters being denied their opportunity to vote.

18. The County does not utilize the SAVE system to verify the citizenship of election workers and employees of vendors who work on election systems, as required by the NOFO. El Paso County does not specifically verify the citizenship status of poll workers using the SAVE list, but our poll workers who process voters are registered voters themselves and have been verified as citizens through that process. El Paso County does not verify citizenship of the employees of voting system vendors.

19. Utilizing the SAVE system to verify the citizenship of election workers and employees of vendors would be difficult as the SAVE list has already been labeled as inaccurate by the Texas Secretary of State. The law currently allows 30 days to respond to the notification sent regarding disputed citizenship. Waiting for election workers to respond to notifications on that timeline could put our department well behind an already tight timeline. To my knowledge, the county does not currently have procedures in place to verify citizenship of the employees of any vendors. In addition, there are often last-minute placements for sick or unavailable poll workers, and the verification process could take weeks. Vendors also add staff as large elections get closer, so the timing required to verify citizenship via SAVE could put both the County and the vendor without enough workers on Election Day.

20. The County cannot compel these decisionmakers outside of its control to take steps towards implementing the new Election Conditions. The decisions about the reliability and accuracy of the SAVE list, the threshold for requiring additional reconciliation or audits, and imposition of the authority or procedures to verify the citizenship of the employees of vendors are authorities that lie with Texas State officials.

21. If elections administration does not receive additional funding to cover the increased costs of complying with the NOFO conditions, the County would need to reduce voting locations to find additional savings. Fewer polling locations would mean voters have to wait in longer lines to cast their vote.

22. The County would also expect to lose poll workers who find learning a new system and processes daunting. The County normally has many election workers say that they will stick around until there is a significant change in processes, and implementing the NOFO's

requirements would be a significant change. The County estimates these changes would increase the cost of training election workers by $11,500 per election for three to four coming elections.

23. The County would also likely need to cut outreach programs, including naturalization ceremonies and voter deputy registrars, to save on costs and limit performance to statutory requirements. An additional challenge would be potentially losing first-time voters who would likely be confused by a change in allowable voting locations from those they are used to.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 31, 2026

Lisa R. Wise
Elections Administrator
El Paso County Elections Department