**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, *et al.*;

Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*;

Defendants.

No. 1:26-cv-02886-AHA

**PLAINTIFFS' COMBINED REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................ 3

I. The Tucker Act Does Not Deprive This Court of Jurisdiction ........................................ 3

II. The States Do Not Need to Be Joined under Rule 19 .................................................. 8

A. The States Are Not "Required" Parties Under Rule 19 (a) ............................................ 9

B. Even if States Were Required Parties, Rule 19 (b) Would Not Permit Dismissal ........ 10

III. FEMA Lacks Statutory Authority to Impose the Conditions ....................................... 12

A. Section 608 and FEMA's Mission Statement Do Not Authorize the Conditions ......... 13

B. Neither the 3% Election-Security Priority nor the Critical-Infrastructure Designation Justifies the Conditions ........................................................................ 15

IV. The Conditions Violate the Constitution ................................................................... 16

A. Dalton Does Not Preclude Plaintiffs' Constitutional Claims ...................................... 16

B. The Conditions Violate the Spending Clause ............................................................ 18

C. The Conditions Violate the Separation of Powers in Usurping the Spending Power ........................................................................................................ 20

D. The Conditions Violate the Separation of Powers in Usurping Congress's Authority to Regulate Federal Elections ............................................................ 21

V. Plaintiffs Are Entitled to Relief on Their *Ultra Vires* Claim in the Alternative. .............. 22

VI. The Court Should Enter the APA's Ordinary Remedy of Vacatur .................................. 24

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abramowitz v. Lake*,
824 F. Supp. 3d 1 (D.D.C. 2026) .......... 23, 24
*Alabama Ass'n of Realtors v. Dep't of Health & Human Servs*,
594 U.S. 758 (2021) .......... 13
*Am. Academy of Pediatrics v. U.S. Dep't of Health & Human Servs.*,
816 F. Supp. 3d 27 (D.D.C. 2026) .......... 5, 7
*Am. Ass'n of Physics Tchrs., Inc. v. Nat'l Sci. Found.*,
804 F. Supp. 3d 45 (D.D.C. 2025) .......... 7
*Am. Ass'n of Univ. Professors v. Trump*,
815 F. Supp. 3d 907 (N.D. Cal. 2025) .......... 8
*Am. Sch. of Magnetic Healing v. McAnnulty*,
187 U.S. 94 (1902) .......... 23
*Bowen v. Massachusetts*,
487 U.S. 879 (1988) .......... 5
*Bridgeport Hosp. v. Becerra*,
108 F.4th 882 (D.C. Cir. 2024) .......... 24
*Cabrera v. U.S. Dep't of Lab.*,
792 F. Supp. 3d 91 (D.D.C. 2025) .......... 25
*California v. Texas*,
593 U.S. 659 (2021) .......... 25
*California v. U.S. Dep't of Transp.,*
808 F. Supp. 3d 291 (D.R.I. 2025) .......... 19
*California v. Wright*,
2026 WL 1915590 (N.D. Cal. July 2, 2026) .......... 7
*Cf. Republic of Philippines v. Pimentel*,
553 U.S. 851 (2008) .......... 11
*Cigar Ass'n of Am. v. FDA*,
132 F.4th 535 (D.C. Cir. 2025) .......... 24
*City & Cnty. of San Francisco v. Trump*,
816 F. Supp. 3d 1017 (N.D. Cal. 2026) .......... 18
*City of Arlington v. FCC*,
569 U.S. 290 (2013) .......... 18
*City of Chicago v. Barr*,
961 F.3d 882 (7th Cir. 2020) .......... 18
*City of Chicago v. U.S. Dep't of Just.,*
822 F. Supp. 3d 873 (N.D. Ill. 2026) .......... 7, 19

*City of Fresno v. Mullin*,
2026 WL 1998576 (N.D. Cal. July 9, 2026) .......... 6, 7
*City of Los Angeles v. Barr*,
929 F.3d 1163 (9th Cir. 2019) .......... 18
*City of Saint Paul, Mn. v. Wright*,
816 F. Supp. 3d 65 (D.D.C. 2026) .......... 7
*City of Salem v. Mullin*,
2026 WL 2445474 (D. Or. Aug. 20, 2026) .......... 7
*Global Health Council v. Trump*,
153 F.4th 1 (D.C. Cir. 2025) .......... 16, 17
*Coal. for Indep. Tech. Rsch. v. Rubio*,
2026 WL 2030770 (D.D.C. July 14, 2026) .......... 25
*Corsi v. Eagle Publ'g, Inc.*,
2008 WL 239581 (D.D.C. Jan. 30, 2008) .......... 10
*County of Santa Clara v. Noem,*
815 F. Supp. 3d 979 (N.D. Cal. 2025) .......... 7, 19
*Crowley Gov't Servs., Inc. v. GSA*,
38 F.4th 1099 (D.C. Cir. 2022) .......... 4
*Dalton v. Specter*,
511 U.S. 462 (1994) .......... 2, 16, 17, 18
*De Csepel v. Republic of Hungary*,
27 F.4th 736 (D.C. Cir. 2022) .......... 11
*Dep't of Educ. v. California*,
604 U.S. 650 (2025) .......... 5
*Detroit Int'l Bridge Co. v. Gov't of Canada*,
192 F. Supp. 3d 54 (D.D.C. 2016) .......... 10
*Fed. Express Corp. v. Dep't of Com.*,
39 F.4th 756 (D.C. Cir. 2022) .......... 23
*Fischer v. United States*,
603 U.S. 480 (2024) .......... 13
*Fisher v. United States*,
402 F.3d 1167 (Fed. Cir. 2005) .......... 6
*Freedom Network v. Trump*,
830 F. Supp. 3d 681 (N.D. Ill. 2026) .......... 19
*Georgia v. Meadows*,
88 F.4th 1331 (11th Cir. 2023) .......... 22
*Gov't of Manitoba v. Bernhardt*,
923 F.3d 173 (D.C. Cir. 2019) .......... 17
*Hatzlachh Supply Co., Inc. v. United States*,
444 U.S. 460 (1980) .......... 3

*Hennepin County, Minnesota v. U.S. Dep't of Health & Human Servs.*,
No. 26-CV-2460 (CRC), 2026 WL 2426300 (D.D.C. Aug. 19, 2026)........................................ 6

*Illinois v. FEMA*,
801 F. Supp. 3d 75 (D.R.I. 2025) ........................................................................................ 7, 18

*Illinois v. Noem*,
813 F. Supp. 3d 282 (D.R.I. 2025)......................................................................................... 6, 7

*In re Aiken County*,
725 F.3d 255 (D.C. Cir. 2013) ................................................................................................. 16

*Kentucky Mun. Energy Agency v. FERC*,
45 F.4th 162 (D.C. Cir. 2022) .................................................................................................. 23

*King County v. Turner*,
2026 WL 2489361 (9th Cir. Aug. 25, 2026)............................................................................ 20

*League of Women Voters of Massachusetts v. Trump*,
2026 WL 2662011 (1st Cir. Sept. 10, 2026)....................................................................... 14, 22

*Learning Res., Inc. v. Trump*,
607 U.S. 229 (2026)................................................................................................................. 20

*LeBlanc v. United States*,
50 F.3d 1025 (Fed. Cir. 1995)................................................................................................... 6

*Lummi Tribe of the Lummi Rsrv., Wash. v. United States*,
870 F.3d 1313 (Fed. Cir. 2017).................................................................................................. 6

*Madsen v. Women's Health Center, Inc.*,
512 U.S. 753 (1994)................................................................................................................. 25

*Make the Rd. New York v. Mullin*,
179 F.4th 16 (D.C. Cir. 2026) .................................................................................................. 24

*Martin Luther King, Jr. Cnty. v. Turner*,
785 F. Supp. 3d 863 (W.D. Wash. 2025).................................................................................. 7

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982) ................................................................................................... 4

*Michigan v. Noem*,
819 F. Supp. 3d 1163 (D. Or. 2025) .......................................................................................... 7

*Montefiore v. Kennedy*,
2026 WL 2547056 (D.D.C. Aug. 28, 2026) ............................................................................ 24

*National Institutes of Health v. American Public Health Association*,
145 S. Ct. 2658 (2025)................................................................................................................ 3

*New Mexico v. Musk*,
824 F. Supp. 3d 80 (D.D.C. 2026) ....................................................................................... 6, 23

*New York v. U.S. Dep't of Health & Human Servs*,
414 F. Supp. 3d 475 (S.D.N.Y. 2019)...................................................................................... 18

*NFIB v. Sebelius*,
567 U.S. 519 (2012).................................................................................................................... 8

*Planned Parenthood of Greater N.Y. v. U.S. Dep't of Health & Hum. Servs.*,
No. CV 25-2453, 2025 WL 2840318 (D.D.C. Oct. 7, 2025)........................................... 7
*R.I. Coal. Against Domestic Violence v. Bondi*,
794 F. Supp. 3d 58 (D.R.I. 2025) ................................................................................ 3, 7
*R.I. Coal. Against Domestic Violence v. Kennedy*,
812 F. Supp. 3d 180 (D.R.I. 2025)..................................................................................... 7
*Robert F. Kennedy Ctr. for Just. & Hum. Rts. v. McMahon*,
2026 WL 1893511 (D.D.C. June 30, 2026)....................................................................... 24
*S.F. Unified Sch. Dist. v. AmeriCorps*,
784 F. Supp. 3d 1280 (N.D. Cal. 2025) ............................................................................. 7
*S.F. Unified Sch. Dist. v. AmeriCorps*,
789 F. Supp. 3d 716 (N.D. Cal. 2025) ............................................................................. 19
*Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*,
584 F.3d 253 (6th Cir. 2009) .............................................................................................. 8
*Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*,
173 F.3d 915 (4th Cir. 1999) ............................................................................................ 10
*Tex. Educ. Agency v. U.S. Dep't of Educ.*,
992 F.3d 350 (5th Cir. 2021) ............................................................................................ 20
*Tootle v. Sec'y of Navy*,
446 F.3d 167 (D.C. Cir. 2006)........................................................................................ 5, 6
*Trump v. CASA, Inc.*, 606 U.S. 831 (2025)...................................................................... 24
*Turping v. United States*,
134 Fed. Cl. 293 (2017) ...................................................................................................... 6
*U.S. ex rel. Hall v. Tribal Dev. Corp.*,
100 F.3d 476 (7th Cir. 1996) ............................................................................................ 10
*United States v. Texas*,
599 U.S. 670 (2023)........................................................................................................... 24
*W. Flagler Assocs., Ltd. v. Haaland*,
71 F.4th 1059 (D.C. Cir. 2023).............................................................................. 8, 10, 11
*Webster v. Doe*,
486 U.S. 592 (1988)............................................................................................................. 7
*West Virginia ex rel. Morrisey v. U.S. Dep't of Treasury,*
59 F.4th 1124 (11th Cir. 2023) ......................................................................................... 20
*West Virginia v. EPA*,
597 U.S. 697 (2022)........................................................................................................... 15
*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001)........................................................................................................... 14

**Statutes**

5 U.S.C.
§ 702 ... 17
§ 706 ... 24, 25
6 U.S.C.
§ 101 ... 14
§ 313 ... 14
§ 604 ... 5, 19
§ 605 ... 5, 19
§ 608(a) ... 2, 5, 13, 14
§ 609 ... 15
28 U.S.C. § 1491(a) ... 3, 5
52 U.S.C. §§ 20501–11, 20901–21145 ... 22

**Rules**

Fed. R. Civ. P. 19 ... 8–12

**U.S. Constitution**

U.S. Const. art. I, § 4 ... 22

## INTRODUCTION[1]

The case before the Court is straightforward. Congress enacted the Homeland Security Grant Program (HSGP) to help states and localities fight terrorism, and Defendants are now leveraging that program to impose nationwide rules for election administration. FEMA has adopted a policy to hold back 20% of HSGP awards, program-wide, unless and until States and counties carry out a series of changes regarding the casting of ballots, audits and ballot reconciliation, voter registration, and eligibility to serve as election workers (the "Election Administration Conditions"). Congress has not authorized any of this. Nor does the Constitution. The executive branch can neither set rules for elections nor unilaterally attach conditions to federal spending. These Election Administration Conditions are unlawful, and Defendants do not dispute that they will imminently harm Plaintiffs unless vacated.

Defendants' threshold objections fall flat. As courts across the country have uniformly held, the Tucker Act does not deprive district courts of jurisdiction over challenges to conditions that an agency seeks to place on federal funding. Plaintiffs do not bring contractual claims, as evidenced by the fact that Plaintiffs bring these claims before any contracts *even exist* for FY2026 HSGP grants. Plaintiffs' rights derive solely from the relevant statutes and constitutional provisions, and Plaintiffs seek classic APA relief to prospectively vacate an agency's unlawful policy—not an order requiring the payment of money or specific performance of a contract.

Defendants' Rule 19 argument fares no better. Defendants argue that all 50 States must be parties, but they cite no case challenging funding conditions that has required joinder of each

[1] The Court's briefing schedule called for Defendants' opposition to Plaintiffs' motion, followed by Plaintiffs' reply on that motion. Plaintiffs' counsel conferred with Defendants' counsel, who advised that, consistent with the schedule set by the Court, Defendants will not be filing a reply brief for their motion for partial summary judgment.

and every possible recipient of the funding. There is no basis to make this the first ever case imposing such a requirement. Plaintiffs' claims would not impair any legally protected interests of States or stop them from adopting any election administration policy on their own. The sole effect of the requested relief would be to remove a *burden* on states, by precluding the federal government from mandating that States comply with the conditions to get HSGP funds.

On the merits, Defendants cite no colorable source of authority for FEMA to impose the conditions. Their lead authority is FEMA's statutory mission statement, a tell-tale sign that Congress in no way authorized the actions FEMA is taking here. The other provision on which they rely, 6 U.S.C. § 608, concerns the "allocation" of HSGP funds, which FEMA has already set and has explicitly stated the Election Administration Conditions will not affect.

Regarding Plaintiffs' constitutional claims, Defendants attempt to circumvent the merits by invoking *Dalton v. Specter*, 511 U.S. 462 (1994). But as the D.C. Circuit held last year, *Dalton* concerns whether Plaintiffs have an equitable cause of action, outside the APA, to bring constitutional claims, not whether an agency's disregard of statutory authority can ever amount to a substantive constitutional violation. Here, Plaintiffs have a cause of action under the APA to challenge unconstitutional agency actions. And Defendants' *Dalton* argument does not apply to Plaintiffs' Spending Clause claim regardless, which does not depend on a lack of statutory authorization. On the constitutional merits, Defendants do not even try to show that any statute provides the clear notice of conditions required for States under the Spending Clause. There also can be no reasonable dispute that Defendants have usurped Congress's exclusive authority to control federal spending and to regulate federal elections.

The law here accords with common sense: Congress in creating the HSGP did not convey authority to FEMA to make rules for federal elections. The conditions must be vacated.

## ARGUMENT

### I. The Tucker Act Does Not Deprive This Court of Jurisdiction

The Tucker Act does not preclude any of Plaintiffs' claims. As an initial matter, it is not clear whether Defendants even argue that the Tucker Act poses a barrier in the present posture, where no HSGP grants containing the conditions have been awarded and accepted. They assert that Plaintiffs are channeled to the Court of Federal Claims "[t]o the extent Plaintiffs seek relief in the form of an order requiring the Government to modify the terms of HSGP grant agreements between FEMA and the states *once they exist*." Opp. 7 (emphasis added); *see also id. at* 7 n.2; *but see id.* at 9. Defendants would be correct to concede that the Tucker Act cannot apply where no relevant grant agreements exist. The Tucker Act provides jurisdiction to the Court of Federal Claims over claims "founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1), and the Act simply does not apply where there is no "actual contract" with the United States. *Hatzlachh Supply Co., Inc. v. United States*, 444 U.S. 460, 465 n.5 (1980); *see R.I. Coal. Against Domestic Violence v. Bondi*, 794 F. Supp. 3d 58, 67 (D.R.I. 2025).

Even if Plaintiffs' States accept HSGP awards before this Court rules, this Court has jurisdiction over Plaintiffs' claims. Plaintiffs bring statutory and constitutional challenges, seeking prospective relief, against FEMA's program-wide policy imposing the Election Administration Conditions on FY2026 HSGP awards. The Supreme Court made clear in *National Institutes of Health v. American Public Health Association*, 145 S. Ct. 2658, 2661 (2025), that district courts maintain jurisdiction over such claims seeking prospective vacatur of agency grants policies. In *NIH*, the Court held the district court likely had jurisdiction under the APA to vacate agency directives prescribing criteria for NIH awards. Justice Barrett noted in her controlling concurrence that "Plaintiffs frequently seek vacatur" of agency policies under the

APA, and the fact that the "policies related to grants [did] not transform a challenge to that guidance into a claim 'founded ... upon' contract that only the CFC can hear." *See id.* at 2661 (Barrett, J., concurring). The same is true here for Plaintiffs' APA claims against FEMA's policy. As in *NIH*, if this Court "decides that agency [policy] violates the APA, it may vacate [it], preventing the agency from using it going forward." *Id.* at 2661 n.1; *see also id.* at 2662–63 (Roberts, C.J., concurring in part and dissenting in part) ("[T]he District Court's vacatur of the challenged directives . . . has prospective and generally applicable implications" and "falls well within the scope of the District Court's jurisdiction under the Administrative Procedure Act.").

This Court's jurisdiction is likewise clear under the D.C. Circuit's two-part test for assessing whether the Tucker Act precludes an APA claim. That test looks to (1) "the source of the rights upon which the plaintiff bases its claims," and (2) the "type of relief sought." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). The source of the rights for Plaintiffs' claims is the HSGP statutory scheme and the relevant constitutional provisions. As evidenced by the fact that Plaintiffs seek summary judgment on their claims before any contract even exists, "[P]laintiffs' rights exist prior to and apart from rights created under the contract," Plaintiffs do not "seek[] to enforce any duty imposed upon the government by [any] contracts," and Plaintiffs' claims do not turn on the interpretation of any contractual provision. *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1107 (D.C. Cir. 2022) (quotations omitted).

Defendants argue the HSGP statutes cannot be the source of Plaintiffs' rights because they do not "entitle them . . . to federal funds absent [the] conditions." Opp. 8. But the statutes specifically provide for funding to jurisdictions like Plaintiffs that FEMA designates as high-risk urban areas under the UASI program, or that are slated to receive SHSP funds under a State's homeland security plan, with no authority for FEMA to hold back those funds until jurisdictions

meet extrinsic policy requirements. 6 U.S.C. §§ 604, 605, 608. The merits of Plaintiffs' claims may be resolved solely in reference to these statutes and the relevant constitutional provisions safeguarding the separation of powers and States' autonomy. *See Am. Academy of Pediatrics v. U.S. Dep't of Health & Human Servs.*, 816 F. Supp. 3d 27, 47 (D.D.C. 2026).

As for the "relief sought," Plaintiffs seek only vacatur of Defendants' decision to impose the Election Administration Conditions, and potentially subsequent equitable relief via a permanent injunction. *See* ECF No. 28-1 ("Pls. Mot.") at 41. Plaintiffs do not seek a court order compelling the payment of money to Plaintiffs or specific performance of any contract. To the extent Plaintiffs ultimately do receive HSGP subawards and associated funding, that would be due to the operation of the relevant statutes and the decisions of FEMA and the States to allocate funds for Plaintiffs. It would not be because the Court ordered such relief, and "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)).

The source of Plaintiffs' rights and the relief sought highlight an independent reason why the Tucker Act cannot strip this Court of jurisdiction: Plaintiffs could not bring claims against the Election Administration Conditions in the Court of Federal Claims. The D.C. Circuit has "categorically reject[ed] the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims." *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006). "[T]here cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act." *Id.*

For the Court of Federal Claims to have jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a), a plaintiff must be able to invoke "a money-mandating source on which to base his

cause of action." *See Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005). Statutes like the ones here providing for grant funds are not "money-mandating" for these purposes because the funds come with "strings attached." *See Lummi Tribe of the Lummi Rsrv., Wash. v. United States*, 870 F.3d 1313, 1318–19 (Fed. Cir. 2017). The constitutional provisions upon which Plaintiffs rely are not money-mandating either. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). Although "[a] breach of contract claim against the Government is a money-mandating source," *Turping v. United States*, 134 Fed. Cl. 293, 306 (2017), Plaintiffs are not alleging and could not allege breach of contract. There are presently no contracts in place, and once there are, requiring compliance with the Election Administration Conditions would be terms of the contracts, not breaches of them. If Plaintiffs filed statutory and constitutional claims in the Court of Federal Claims against FEMA's decision to impose the Election Administration Conditions—in not-yet-existing grant agreements—the case would be summarily dismissed for lack of jurisdiction. *Tootle* dictates that this Court must have jurisdiction in these circumstances.

For all of the above reasons, district courts "have found with near or total uniformity that they have jurisdiction over claims" involving grant conditions. *City of Fresno v. Mullin*, 2026 WL 1998576, at *34 (N.D. Cal. July 9, 2026) (cleaned up). To Plaintiffs' knowledge, in the dozens of lawsuits filed during the current administration against the imposition of funding conditions, not a single court has held that the Tucker Act precludes such claims. *E.g.*, *Illinois v. Noem*, 813 F. Supp. 3d 282, 298 (D.R.I. 2025) ("[L]ike many other courts that have considered similar arguments, the Court finds that the Tucker Act does not cover challenges to grant funding

conditions.”). Courts in this District are no exception; they have uniformly held that the Tucker Act has no bearing on prospective challenges to funding conditions or criteria.[2]

Finally, and in all events, Supreme Court precedent dictates that this Court must have jurisdiction over Plaintiffs’ constitutional claims. Where, as here, a plaintiff would lack any judicial forum to bring a constitutional challenge if a district court lacked jurisdiction, Congress’ “intent” to produce this outcome “must be clear.” *Webster v. Doe*, 486 U.S. 592, 603 (1988). The Court “require[s] this heightened showing in part to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.” *Id.* (quotations omitted). Here, the Tucker Act contains no clear statement that Congress intended to strip parties of the ability to challenge the constitutionality of grant conditions. That is dispositive under *Webster*. Numerous courts have recognized that plaintiffs must be able to bring constitutional claims against grant-related actions in district court. *E.g.*, *Am. Academy of Pediatrics*, 816 F. Supp. 3d at 51; *City of Saint Paul, Mn. v. Wright*, 816 F. Supp. 3d 65, 71 (D.D.C. 2026); *California v. Wright*, 2026 WL 1915590, at *9 (N.D. Cal. July 2, 2026).

---

[2] *See, e.g.*, *Hennepin County, Minnesota v. U.S. Dep’t of Health & Human Servs.*, No. 26-CV-2460 (CRC), 2026 WL 2426300, at *12 (D.D.C. Aug. 19, 2026); *New Mexico v. Musk*, 824 F. Supp. 3d 80, 93 (D.D.C. 2026); *Planned Parenthood of Greater N.Y. v. U.S. Dep’t of Health & Hum. Servs.*, No. CV 25-2453, 2025 WL 2840318, at *13 (D.D.C. Oct. 7, 2025); *Am. Ass’n of Physics Tchrs., Inc. v. Nat’l Sci. Found.*, 804 F. Supp. 3d 45, 66 (D.D.C. 2025). The grant-conditions cases outside of this District rejecting the government’s Tucker Act argument are too many to list, but examples include: *City of Salem v. Mullin*, 2026 WL 2445474, at *7 (D. Or. Aug. 20, 2026); *Illinois*, 813 F. Supp. 3d at 298; *City of Fresno*, 2026 WL 1998576, at *34; *City of Chicago v. U.S. Dep’t of Just.,* 822 F. Supp. 3d 873, 885 (N.D. Ill. 2026); *Martin Luther King, Jr. Cnty. v. Turner*, 785 F. Supp. 3d 863, 877–79 (W.D. Wash. 2025); *R.I. Coal. Against Domestic Violence v. Kennedy*, 812 F. Supp. 3d 180, 188 (D.R.I. 2025); *R.I. Coal. Against Domestic Violence v. Bondi*, 794 F. Supp. 3d 58, 66–67 (D.R.I. 2025); *Michigan v. Noem*, 819 F. Supp. 3d 1163, 1177 (D. Or. 2025); *County of Santa Clara v. Noem,* 815 F. Supp. 3d 979, 1036–37 (N.D. Cal. 2025); *S.F. Unified Sch. Dist. v. AmeriCorps*, 784 F. Supp. 3d 1280, 1291–92 (N.D. Cal. 2025); *Illinois v. FEMA*, 801 F. Supp. 3d 75, 90 (D.R.I. 2025).

## II. The States Do Not Need to Be Joined under Rule 19

Defendants raise an additional threshold objection: *all* states who receive HSGP awards (i.e., all 50 states) are required parties under Rule 19. Under Defendants' audacious theory, in any lawsuit challenging government funding conditions, a plaintiff must join every existing and potential future recipient of the funding because the lawsuit purportedly threatens those recipients' "ability to contract with the Government unimpeded." Opp. 10–11. Defendants do not cite any court that has ever interpreted Rule 19 in this manner. And in the few cases where government defendants have even made a similar argument, courts expressly rejected it. *See Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 267 (6th Cir. 2009) (en banc); *Am. Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907, 975 (N.D. Cal. 2025).

Courts routinely decide challenges to federal funding conditions "without participation by the relevant states" or other recipients that might be affected by the judgment. *See Pontiac*, 584 F.3d at 267. Indeed, in no Supreme Court decision adjudicating federal funding conditions on States have all 50 states been parties to the action. *See, e.g.*, *NFIB v. Sebelius*, 567 U.S. 519, 581–86 (2012) (invalidating conditions on Medicaid funding). And in cases where federal funding is not limited to states, Defendants' theory would mean that plaintiffs must join hundreds, or even thousands, of parties that may receive the funds.

Nothing in Rule 19 requires that absurd result. Rule 19 "is equitable and discretionary" and "calls for a pragmatic decision based on practical considerations in the context of particular litigation." *W. Flagler Assocs., Ltd. v. Haaland*, 71 F.4th 1059, 1071 (D.C. Cir. 2023) (quotations omitted). The rule's "guiding philosophy is to avoid dismissal whenever possible." *Id.* (cleaned up). Here, the States are not required parties under Rule 19(a), and even if they were, Rule 19(b) would permit proceeding without them.

### A. The States Are Not "Required" Parties Under Rule 19(a)

A party is "required" under Rule 19(a) if (A) in their absence, the court cannot accord "complete relief" among existing parties, or (B) they claim an "interest relating to the subject of the action" and are situated such that disposing of the action in their absence may (i) as a practical matter "impair or impede the person's ability to protect the interest"; or (ii) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Neither prong is met here.

First, the court can accord complete relief among the existing parties. Defendants do not argue otherwise in their brief, and for good reason. This is a legal challenge to action taken by the *federal government* in imposing the Election Administration Conditions on HSGP awards.

Second, this action will not impair any State's legally protected interest. Defendants urge that States have an interest in contracting with the federal government "unimpeded by the interests of nonparties to those contracts." Opp. 11. But the relief Plaintiffs seek would only preclude the federal government from mandating that States comply with the conditions to receive their funds. The relief would solely remove a *burden* on the States, not impair any rights or benefits in which States have a legally protectable interest. Every State—including Texas, Tennessee and Ohio—would remain able to accept and administer their HSGP awards (per the NOFO's FY2026 allocations), and every State would be free to adopt the policies required by the Election Administration Conditions as permitted under state law. Defendants cite no authority recognizing that States have a legally cognizable interest in having the federal government force requirements upon them, particularly where the federal government's actions are unauthorized and the states could adopt those requirements on their own accord.

Defendants also claim that States have an interest in "the validity of any contract they have chosen to enter into with the Government." Opp. 10–11. But as Defendants acknowledge, "FY26 HSGP grant agreements between the FEMA and the states *do not exist*" as of the filing date. Opp. 7 n.2 (emphasis added). And Plaintiffs do not seek to invalidate any future contract entered between States and the federal government. *Id.* at 11.[3] Plaintiffs merely seek to vacate FEMA's imposition and enforcement of the Election Administration Conditions.[4]

Finally, adjudication of Plaintiffs' claims would not expose any existing party to inconsistent obligations, and Defendants do not argue otherwise.[5]

**B. Even if States Were Required Parties, Rule 19(b) Would Not Permit Dismissal.**

Even if the States were required parties (and they are not), dismissal would be unwarranted. "If a party is required but cannot be joined (for instance, due to its sovereign immunity)," the second step for the Court is to "determine 'whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.'" *W. Flagler Assocs., Ltd.*, 71 F.4th at 1070 (quoting Rule 19(b)). The court considers four factors: "(1) whether a judgment rendered in the person's absence might prejudice that person or the existing parties, (2) whether such prejudice can be lessened or avoided, (3) whether a judgment

[3] That stands in contrast to the cases cited by Defendants, where plaintiffs sought to invalidate or rescind agreements. *See Detroit Int'l Bridge Co. v. Gov't of Canada*, 192 F. Supp. 3d 54, 68 (D.D.C. 2016) (seeking to overturn approval of an agreement); *U.S. ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 478–79 (7th Cir. 1996) (seeking to rescind contracts and recoup monies paid). Nor do Plaintiffs seek to avoid or void results from arbitration proceedings. *See Corsi v. Eagle Publ'g, Inc.*, 2008 WL 239581 (D.D.C. Jan. 30, 2008); *Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999).

[4] Plaintiffs' amended complaint seeks additional relief, Am. Compl. at 51–52, but their pending partial summary judgment motion seeks only that the Election Administration Conditions be declared unlawful, set aside, and vacated. Pls.' Mem. at 41; Pls.' Prop. Order, ECF No. 28-16.

[5] As States are not required parties, Plaintiffs had no Rule 19(c) obligation. *See* Opp. 11 n.3.

rendered in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." *Id.* (cleaned up).

Here, the States themselves could not be involuntarily joined due to sovereign immunity, and each of the four Rule 19(b) factors weighs *against* dismissal. First, the States would not be prejudiced by vacating the Election Administration Conditions that serve only to burden them, as explained above. *Cf. Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008) (dismissal required where a required party enjoys sovereign immunity and "there is a potential for injury to the interests of the absent sovereign"). Moreover, the existing Defendants are "both capable of and interested in representing the interests of" any States that wish to have the Election Administration Conditions forced upon them, eliminating any possible prejudice. *De Csepel v. Republic of Hungary*, 27 F.4th 736, 748 (D.C. Cir. 2022); *see also id.* at 749–50 (distinguishing *Pimentel* on this basis); *W. Flagler Assocs., Ltd.*, 71 F.4th at 1070–71 (similar).[6]

Defendants' remaining Rule 19(b) arguments are barely raised and readily refuted. On Rule 19(b)(2), they argue that the purported prejudice to States cannot be lessened or avoided because "the relief sought by Plaintiffs requires the amendment of an award package to remove conditions the states may already be working to implement or the amendment of an executed grant agreement." Opp. 12. But as explained, there is no cognizable prejudice to lessen or avoid for States if FEMA cannot enforce the Election Administration Conditions as included in any agreement, and in any event, FY2026 HSGP grant agreements with States do not yet exist and are not being implemented. Opp. 7 n.2.[7]

---

[6] Defendants do not say whether the states should be joined as plaintiffs or as defendants.

[7] If this factor proves important to the Court's conclusions, the Court could consider how its judgment, relief, or other measures could lessen or avoid any prejudice to the states. *See* Fed. R. Civ. P. 19(b)(2)(A)–(C); *supra* n.5. Plaintiffs do not believe the Court needs to reach this question, as Defendants' Rule 19 argument fails for many other reasons.

As to Rule 19(b)(3), Defendants fail to establish that a judgment rendered in the states' absence would be inadequate. They baldly assert that this Court's adjudication of Plaintiffs' lawsuit would "invite[] litigation" and "multiply[] . . . disputes," Opp. 12, without explaining why or how. Federal courts can and do provide adequate relief in grant conditions cases without requiring all grantees to be joined under Rule 19, as explained already.

Finally, on Rule 19(b)(4), Defendants assert in a single sentence that Plaintiffs would have an "adequate remedy if the action were dismissed for nonjoinder" because "Plaintiffs could simply re-file an action, naming the proper parties to any HSGP agreement whose terms Plaintiffs challenge." Opp. 12. That breezy suggestion ignores that the States enjoy sovereign immunity, as Defendants appear to acknowledge. *Id.* at 11 n.3. And this argument makes no sense in the Rule 19(b) context, which is for scenarios where the absent party cannot be joined.

## III. FEMA Lacks Statutory Authority to Impose the Conditions

On the merits, Defendants identify no statute authorizing FEMA to condition HSGP funding on States adopting the Executive Branch's preferred election administration procedures regarding methods of voting, the auditing and reconciliation of ballots, poll worker eligibility, and databases to use for checking registered voters' citizenship.

Defendants do not dispute that they must identify a clear statement of statutory authority to impose these conditions for three independent reasons: they claim power traditionally reserved to the states, the case involves major questions, and they claim Congress has delegated its core power of the purse. Pls.' Mot. 29–30. And Defendants do not contend that any statute contains the clear statement these doctrines require. *See* Opp. 13–15. That alone resolves the merits of this claim. But even if no clear statement were required, Defendants identify no statutory language that plausibly authorizes FEMA's Election Administration Conditions.

### A. Section 608 and FEMA's Mission Statement Do Not Authorize the Conditions

Defendants principally rely on 6 U.S.C. § 608, but that provision is inapposite because it governs allocations, not conditions imposed after allocation. Section 608 provides criteria for "allocating [HSGP] funds among States and high-risk urban areas." 6 U.S.C. § 608(a). For FY2026 HSGP funds, FEMA has already determined those allocations, which are set forth for each State and designated high-risk urban area in Appendix 1 of the 2026 NOFO. *See* ECF No. 36-5 at 69–75 (delineating "SHSP Allocations," "UASI Allocations," and "OPSG Allocations").

The Election Administration Conditions do not alter those allocations. FEMA has said so expressly: "The holdback affects the timing of access to funds, not the amount of the award." ECF No. 36-6 at 2. In other words, FEMA will withhold 20% of each State's and high-risk urban area's allocation until they comply, but the amount allocated pursuant to 6 U.S.C. § 608(a) does not change. Section 608 thus cannot be authority for the Election Administration Conditions.

Moreover, even if § 608 could theoretically authorize FEMA to place conditions on the release of allocated funds, it would not authorize FEMA to impose the Election Administration Conditions. Section 608(a) focuses on applicants' "relative threat, vulnerability, and consequences from *acts of terrorism*." Those factors include terrorism-related risks to critical infrastructure. *Id.* § 608(a)(1)(D). Section 608(b) then identifies the "types of threat" FEMA must consider when assessing terrorism risk "for purposes of subsection (a)(1)." It enumerates eight types of threats, all of which focus on violence or damage to people or infrastructure: biological, chemical, cyber, explosives, incendiary, nuclear, radiological, and suicide bombers. *Id.* § 608(b)(1)–(8). The section then contains a residual clause for "such other types of threats determined relevant by the Administrator." *Id.* § 608(b)(9). Defendants rely on that residual clause as authority for the Election Administration Conditions. *See* Opp. 13.

But this Court must read a residual clause in the context of "whatever examples come before it." *Fischer v. United States*, 603 U.S. 480, 487 (2024); *accord Alabama Ass'n of Realtors v. Dep't of Health & Human Servs.*, 594 U.S. 758, 764–66 (2021). The Election Administration Conditions do not address any "type[] of threat" of terrorism at all, let alone a type of threat remotely similar to the eight enumerated threats that precede the residual clause. Indeed, FEMA did not describe the conditions as directed at terrorism in announcing them in the 2026 NOFO. It said the conditions are "[t]o strengthen the integrity of U.S. elections." ECF No. 36-5 at 15. Even now, Defendants do not claim that the conditions are aimed at preventing or responding to "terrorism" as statutorily defined under 6 U.S.C. § 101(18). Nor could they. *See, e.g.*, ECF No. 36-6 at 4 (requiring "livestream or recorded video" of audits "[t]o support public confidence").

Defendants' interpretation of § 608 would also raise serious constitutional questions. On their reading, § 608's residual reference to "other types of threats" authorizes FEMA to regulate any activity touching any sector designated as critical infrastructure, without limitation or standards to cabin FEMA's authority. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001). As relevant here, it would give FEMA sweeping authority over election administration, a field the Constitution assigns to the States and Congress, not the Executive. If ever there were a case where Congress "hid[] elephants in mouseholds," *id.* at 468, it would be Defendants' interpretation of § 608's residual clause. This Court must reject such an interpretation.

Beyond § 608, Defendants point only to FEMA's general mission statement as statutory authority for the Election Administration Conditions. 6 U.S.C. § 313. That clause identifies FEMA's mission as protecting the Nation from "natural disasters, acts of terrorism, and other man-made disasters." 6 U.S.C. § 313(b)(2)(A). The Election Administration Conditions address none of those subjects. And Congress plainly did not intend that a general statement of purpose

for "the Federal Emergency Management Agency," containing no mention of elections, would authorize FEMA to dictate election administration procedures nationwide. *See West Virginia v. EPA*, 597 U.S. 697, 716 (2022); *League of Women Voters of Massachusetts v. Trump*, 2026 WL 2662011, at *2 (1st Cir. Sept. 10, 2026) (finding it unlikely "Congress would delegate constitutionally assigned tasks relevant to maintaining our electoral system to the Postal Service through the 'wafer-thin reed' of a general grant of authority to manage the postal system.").

**B. Neither the 3% Election-Security Priority nor the Critical-Infrastructure Designation Justifies the Conditions**

Defendants note that Plaintiffs do not challenge the 3% election-security requirement or the 2017 designation of election systems as critical infrastructure, but neither undercuts Plaintiffs' challenge to the Election Administration Conditions.

Unlike the Election Administration Conditions, the 3% requirement concerns how HSGP recipients use the federal funds. Section 609 authorizes FEMA to prescribe the uses of HSGP funds so long as they are "related to preventing, preparing for, protecting against, and responding to acts of terrorism." 6 U.S.C. § 609(a). In that regard, and again, unlike the Election Administration Conditions, the 3% requirement is limited to "investment[s] that support[] physical and/or cyber election security." ECF No. 36-5 at 17.

DHS Secretary Jeh Johnson's 2017 designation of election infrastructure such as voting machines as critical infrastructure is irrelevant. This allows FEMA to prioritize *the use of HSGP funds* to protect these physical and cyber resources from terrorist attacks. The conditions here are unrelated to how grantees expend their grant funds, and are not targeted at preventing or responding to terrorism. Moreover, DHS recognized in making the 2017 designation that it did not authorize regulation of state and local administration of elections. Defs.' Ex. 4, ECF No. 38-

8. FEMA has lawful means of protecting critical election infrastructure from terrorism, but the Election Administration Conditions are not among them.

## IV. The Conditions Violate the Constitution

### A. *Dalton* Does Not Preclude Plaintiffs' Constitutional Claims

Citing *Global Health Council v. Trump*, 153 F.4th 1 (D.C. Cir. 2025), Defendants argue that Plaintiffs' constitutional claims are foreclosed by *Dalton v. Specter*, 511 U.S. 462 (1994) because those claims derive from statutory violations. That is wrong for several reasons.

First, *Global Health Council* was strictly limited to whether the plaintiffs had a cause of action, but here Plaintiffs indisputably have a cause of action under the APA to seek relief for Defendants' constitutional violations. In *Global Health Council*, the D.C. Circuit addressed whether the plaintiffs had "an implied equitable cause of action *not arising under the APA*" to "vindicate separation of powers principles." 153 F.4th at 13–14. The court emphasized that it was not addressing "the merits" of whether a separation of powers violation had occurred, but instead "the antecedent question of whether the grantees had a cause of action in the first place." *Id.* at 15 n.10. The court held that plaintiffs cannot bring an equitable cause of action for separation of powers violations that derive from statutory commands or prohibitions, because recognizing such a cause of action would enable plaintiffs "to avoid limits on judicial review" of statutory violations. *Id.* at 16. Indeed, *Dalton*'s animating concern was preventing the plaintiffs from circumventing the Court's recent holding in *Franklin v. Massachusetts*, 505 U.S. 788 (1992), that presidential actions are not subject to APA review. *See Dalton*, 511 U.S. at 468–72.

Critically, *Global Health Council*'s limited focus on a cause of action is how the court distinguished the D.C. Circuit's prior decision in *In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013) (Kavanaugh, J.). There, the court held that an agency violated "bedrock principles of

constitutional law"—and specifically, "our constitutional system of the separation of powers"—where the agency disregarded statutory requirements. *Id.* at 257, 259. The violation derived from the relevant statutory scheme, but the Court's holding was unmistakably constitutional: the Court's "decision . . . rest[ed] on the constitutional authority of Congress." *Id.* at 267. The court in *Global Health Council* distinguished *Aiken County* on the basis that it "involved a writ of mandamus under the APA" as the cause of action, "rather than a constitutional cause of action." *Global Health Council*, 153 F.4th at 16.

Here, Count VI of the amended complaint asserts an APA claim for the three different constitutional violations. The APA "provides a cause of action to any 'person . . . adversely affected or aggrieved by agency action,'" *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 181 (D.C. Cir. 2019) (quoting 5 U.S.C. § 702). The question addressed in *Global Health Council* and *Dalton* is simply not implicated for this claim. The claim must instead be resolved on the merits, and on those merits, Plaintiffs do not assert that Defendants have committed statutory transgressions that are "*ipso facto* in violation of the Constitution." *Dalton*, 511 U.S. at 472. Plaintiffs allege that Defendants' unauthorized conditioning of funding and regulation of elections violate the structure of the Constitution, by usurping exclusive congressional powers and exceeding the federal government's ability to regulate the States.

Plaintiffs' constitutional claims are also distinguishable from those in *Global Health Council* and *Dalton* because Plaintiffs do not allege that Defendants have contravened a specific statutory requirement; rather, Plaintiffs' claims are that Defendants are acting without any colorable statutory authorization at all. As described above, Defendants point to no provision of the HSGP statutory scheme that authorizes FEMA to impose policy mandates outside the use of federal funds, as a condition of receiving HSGP funds. Plaintiffs' separation of powers claims

thus allege that FEMA is acting in the "absence of any statutory authority," not "in excess of powers granted to [it] by Congress." *Dalton*, 511 U.S. at 472–73 (quotations omitted). As courts have recognized in the context of challenges to grant conditions, *Dalton* does not preclude such constitutional claims. *See City of Chicago v. Barr*, 961 F.3d 882, 919 (7th Cir. 2020).

In all events, *Dalton* certainly does not preclude Plaintiffs' Spending Clause challenge based on the limits of conditioning federal funds to States. Even if the relevant statutes could be read to delegate authority to FEMA to impose conditions like the Election Administration Conditions, FEMA's imposition of the conditions violates the Spending Clause because the conditions are not germane to the purposes of the HSGP, and because the conditions are not clearly set forth in the statute itself. *See infra* IV.B. This constitutional claim thus is not contingent upon any statutory violation or lack of authorization.

### B. The Conditions Violate the Spending Clause

Defendants contend that the Spending Clause constrains Congress alone, leaving agencies free to impose conditions on federal grants that Congress could not. Opp. 18. That is backward. FEMA has no spending power of its own. It may attach conditions to federal funds only through authority Congress has given it. *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). And interposing an agency between Congress and fund recipients neither enlarges nor diminishes Congress's power. *City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 n.6 (9th Cir. 2019). Congress cannot delegate power it does not have or use delegation to evade the Spending Clause's limits on conditioning funding to States. Any other rule would allow Congress to accomplish through an agency what the Constitution forbids Congress to do itself. Courts have thus consistently recognized that an agency's imposition of funding conditions implicates the Spending Clause. *See, e.g.*, *New York v. U.S. Dep't of Health & Human Servs.*, 414 F. Supp. 3d

475, 566 n.70 (S.D.N.Y. 2019); *Illinois*, 801 F. Supp. 3d at 94–96; *City & Cnty. of San Francisco v. Trump*, 816 F. Supp. 3d 1017, 1037–40 (N.D. Cal. 2026).

As Plaintiffs explained in their opening brief, the Election Administration Conditions violate the Spending Clause in two respects: they bear no sufficient relationship to the federal interests in HSGP, and Congress never imposed the Conditions unambiguously. Pls. Mot. 35–37.

Regarding the relatedness requirement, Congress defined the program-specific interests here: the HSGP exists to assist State and local governments in “preventing, preparing for, protecting against, and responding to acts of terrorism,” 6 U.S.C. §§ 604(a)(1), 605(a)(1). Those purposes provide the relevant benchmark, not whether an action bears some relationship to “critical infrastructure” or “national security” writ large. The Election Administration Conditions address various aspects of election administration—how voters mark ballots, how counties conduct audits and reconcile ballots, who may serve as election workers, and how States maintain their voter rolls—that do not bear any reasonable relationship to stopping or responding to terrorism. As mentioned, Defendants candidly admitted as much in the 2026 NOFO, stating that the conditions were about promoting vague notions of “election integrity.”

Defendants concede that funding conditions must bear “some relationship” to the funded program but emphasize that relatedness is a “low threshold.” Opp. 18. But low is not nonexistent, and the Election Administration Conditions do not clear this bar. The lack of nexus between the Conditions and HSGP’s purposes is fatal, and courts have not hesitated to reject comparably mismatched conditions in other cases.[8]

[8] *See, e.g.*, *Freedom Network v. Trump*, 830 F. Supp. 3d 681, 709 (N.D. Ill. 2026) (immigration enforcement and anti-DEI funding conditions were unrelated to grants under Trafficking Victims Protection Act); *City of Chicago v. U.S. Dep’t of Just.,* 822 F. Supp. 3d 873, 888 (N.D. Ill. 2026) (immigration-enforcement and anti-DEI conditions were likely not reasonably related to grants under the Community Policing Act); *Santa Clara*, 815 F. Supp. 3d at 1036–37 (anti-DEI

As for the Spending Clause's clear-notice argument, Defendants do not address Plaintiffs' argument and the relevant requirement. Plaintiffs explained that *Congress* must provide clear notice of funding conditions to States "directly [in] the statute." Pls. Mot. 37 (quoting *West Virginia ex rel. Morrisey v. U.S. Dep't of Treasury,* 59 F.4th 1124, 1147 (11th Cir. 2023) and *Tex. Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 361 (5th Cir. 2021)). Agencies may not supply clarity on funding conditions not present in the statute. *Id.*

Defendants do not deny this legal proposition or provide legal authority to the contrary. *See* Opp. 19–20. They assume without explanation that it suffices that FEMA provide clear notice of the conditions in their NOFO and subsequent conditions. *See id.* But that is incorrect for the reasons Plaintiffs have explained. Because there is no dispute that Congress did not provide clear notice of the Election Administration Conditions in the HSGP statutory scheme, the conditions plainly violate the Spending Clause.

### C. The Conditions Violate the Separation of Powers in Usurping the Spending Power

The "core congressional power of the purse" is Congress's "most complete and effectual weapon" to set policies for the nation. *Learning Res., Inc. v. Trump*, 607 U.S. 229, 243 (2026) (Roberts, C.J.) (plurality opinion) (quotations omitted). The power to attach conditions to federal funds is part and parcel of that "spending power, which is exclusively committed to Congress." *King County v. Turner*, 2026 WL 2489361, at *5 (9th Cir. Aug. 25, 2026) (cleaned up). Agencies thus "cannot impose" funding conditions "absent congressional authorization." *Id.* (cleaned up).

---

conditions attached to DHS and FEMA disaster and emergency preparedness grants were not sufficiently related to those programs); *California v. U.S. Dep't of Transp.,* 808 F. Supp. 3d 291, 307–08 (D.R.I. 2025) (immigration conditions unrelated to federal transportation funding violated Spending Clause); *S.F. Unified Sch. Dist. v. AmeriCorps*, 789 F. Supp. 3d 716, 750–51 (N.D. Cal. 2025) (anti-DEI conditions on AmeriCorps' grants likely violated the Spending Clause because they lacked nexus to the purposes of AmeriCorps' funding program).

Yet here, Defendants do not deny that the Election Administration Conditions reflect the Executive's policy agenda, not Congress's. And even if Congress could broadly delegate power to the Executive to pursue its own policy agenda through spending conditions, a highly questionable proposition, Congress did not do that here. Defendants again invoke FEMA's general responsibility to prepare for disasters and terrorism and the statutes governing HSGP, Opp. 16–17, but neither source does the work Defendants assign it for the reasons already explained. Defendants have usurped Congress's power of the purse in concocting conditions on federal funding from whole cloth.

### D. The Conditions Violate the Separation of Powers in Usurping Congress's Authority to Regulate Federal Elections

Defendants posit that the Election Administration Conditions are consistent with the Elections Clause because they serve as a "modest" exercise of FEMA's statutory authority to "safeguard the country's critical infrastructure." Opp. 20–21. But there is nothing modest about the Election Administration Conditions; they reach into nearly every aspect of local election administration, impacting how election officials manage voter registration, how voters cast ballots, and how election officials count ballots and reach final results. They regulate the minutiae of core election administration functions, setting details for audit sample sizes and methods and the format of checklists for ballot reconciliation. And they would force election officials to divert significant time, money, and staff resources to implement them when preparations for the 2026 midterm elections are already underway. *See* Pls. Mot. 7–10.

Only Congress may impose a nationwide election code for federal elections, not the Executive, and certainly not FEMA through a program to help states and localities respond to terrorist attacks. Nor does DHS's designation of election systems as critical infrastructure confer election regulatory authority upon FEMA. Rather, as detailed above, the election infrastructure

designation allows DHS to prioritize resources to state and local election officials. It does not authorize the Executive to take over Congress's exclusive federal power to regulate election administration, as DHS itself stated at the time of making the designation. *Supra* III.B.

Defendants' reasoning has no limiting principle. It would allow FEMA to regulate *any* feature of election administration pursuant to the HSGP, because election infrastructure has been designated as critical infrastructure. Opp. 20. Surely FEMA has no authority over voter ID requirements, poll hours or locations, or election worker pay and bathroom breaks, but Defendants' reasoning would sweep that far. The Constitution does not give the Executive Branch any of this power. U.S. Const. art. I, § 4; *see also, e.g.*, *League of Women Voters of Massachusetts v. Trump*, No. 26-2029, 2026 WL 2662011, at *2 (1st Cir. Sept. 10, 2026) (Under the Elections Clause, "regulation of the manner of holding elections for members of Congress. . . [is] assign[ed] to the States and Congress, and not to an executive agency, such as the Postal Service"); *Georgia v. Meadows*, 88 F.4th 1331, 1346–47 (11th Cir. 2023) (similar).

The clarity and specificity with which Congress *has* chosen to grant any authority to executive agencies in enacting the National Voter Registration Act and Help America Vote Act make Defendants' transgressions all the more glaring here. *See* 52 U.S.C. §§ 20501–11, 20901–21145; *see League of Women Voters of Massachusetts*, 2026 WL 2662011, at *2; Pls.' Mot. 38–39. The Constitution leaves no room for the Executive to unilaterally usurp its careful balance of state and congressional authority to regulate elections.

## V. Plaintiffs Are Entitled to Relief on Their *Ultra Vires* Claim in the Alternative.

If Plaintiffs are unable to obtain the relief they seek through other claims, Defendants' actions present exceptional circumstances that require relief in the form of *ultra vires* review.

Defendants argue that Plaintiffs' *ultra vires* claim restates a statutory-authority argument and fails to identify any affirmative violation of the HSGP statute. Opp. 22. But the crux of Plaintiffs' *ultra vires* claim does not rely on any specific contravention of the HSGP statute: in imposing the Election Administration Conditions, Defendants have "exercise[ed] immense power without any grant of statutory authority *whatsoever*." *New Mexico v. Musk*, 824 F. Supp. 3d 80, 105 (D.D.C. 2026) (emphasis added) (holding that plaintiffs stated an *ultra vires* claim). That is precisely "the sort of extreme legal error that can sustain a claim for *ultra vires* review." *Id.* (internal quotations omitted); *see also id.* at 105 (explaining the distinction between claims that defendants have acted "without *any* grant of authority whatsoever" versus "exceeded a grant of statutory authority"). Defendants concede as much. Opp. 22 (acknowledging that "*[u]ltra vires* claims are confined to 'extreme agency error where the agency has stepped so plainly beyond the bounds of its statutory authority or acted so clearly in defiance of it'") (quoting *Fed. Express Corp. v. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022)).

The absence of a specific statutory prohibition on the Election Administration Conditions does not defeat Plaintiffs' *ultra vires* claim. Congress cannot have been expected to prohibit FEMA from rewriting voter list maintenance procedures, for example—conduct far beyond what Congress could have contemplated when crafting the HSGP statutes. Defendants' imposition of the Election Administration Conditions are precisely the "extraordinary circumstances" that justify *ultra vires* review. *See, e.g.*, *New Mexico*, 824 F. Supp. 3d at 105; *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902) (upholding *ultra vires* review because "[o]therwise, the individual [would be] left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law.").

## VI. The Court Should Enter the APA's Ordinary Remedy of Vacatur

"Vacatur is the normal remedy for unsustainable agency action." *Kentucky Mun. Energy Agency v. FERC*, 45 F.4th 162, 179 (D.C. Cir. 2022) (cleaned up). That follows from the APA's text: the reviewing court "shall . . . hold unlawful and set aside" agency action found to be arbitrary, capricious, or otherwise contrary to law. 5 U.S.C. § 706(2)(A); *Abramowitz v. Lake*, 824 F. Supp. 3d 1, 26 (D.D.C. 2026). Defendants do not argue that this case is exceptional, justifying a departure from the normal remedy. Instead, they offer two broader objections to APA vacatur, each of which has been soundly rejected by this court.

First, Defendants rely on Justice Gorsuch's concurrence in *United States v. Texas*, 599 U.S. 670, 695 (2023), to argue that vacatur is not available. Opp. 23. But a three-Justice concurrence does not displace binding circuit law. As courts in this District have explained, that concurrence "does not reflect the current state of the law." *Abramowitz*, 824 F. Supp. 3d at 27. The D.C. Circuit has continued to apply vacatur as the default remedy under the APA. *See, e.g., Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 891 (D.C. Cir. 2024); *Cigar Ass'n of Am. v. FDA*, 132 F.4th 535, 541 (D.C. Cir. 2025).

Second, Defendants argue that *Trump v. CASA, Inc.*, 606 U.S. 831 (2025) restricts APA vacatur. Not so. *CASA* addressed *injunctions* extending beyond the parties and expressly reserved "whether the Administrative Procedure Act authorizes federal courts to vacate federal agency actions." *Id.* at 847 n.10. A decision that reserves a question does not answer it, and courts in this District have universally rejected Defendants' proposed extension of *CASA*. *See Robert F. Kennedy Ctr. for Just. & Hum. Rts. v. McMahon*, 2026 WL 1893511, at *9 n.4 (D.D.C. June 30, 2026); *Montefiore v. Kennedy*, 2026 WL 2547056, at *9 (D.D.C. Aug. 28, 2026) (citing cases).

The operative distinction is straightforward. An injunction is an equitable remedy that commands a party to act or refrain from acting. Vacatur is a remedy created by the text of the APA and "operate[s] on the legal status of the challenged agency action," suspending its force. *Coal. for Indep. Tech. Rsch. v. Rubio*, 2026 WL 2030770, at *25 (D.D.C. July 14, 2026) (quoting *Make the Rd. New York v. Mullin*, 179 F.4th 16, 31 (D.C. Cir. 2026)).

The same distinction also disposes of Defendants' demand for party-specific relief. Section 706 "specif[ies] what courts are authorized to do with respect to agency actions, not parties." *See Cabrera v. U.S. Dep't of Lab.*, 792 F. Supp. 3d 91, 106 (D.D.C. 2025). And § 706 tells courts to "set aside" unlawful agency action. It does not direct courts to preserve unlawful agency action for nonparties.

The remaining cases Defendants cite do not concern APA vacatur but rather the equitable remedies of declaratory and injunctive relief. *California v. Texas*, 593 U.S. 659, 672 (2021), addressed declaratory relief; *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 765 (1994), addressed an injunction. Neither alters the non-equitable statutory relief commanded by APA § 706 or the D.C. Circuit's settled remedial rule.

FEMA's decision to impose the Election Administration Conditions is unlawful agency action, and this Court should apply the ordinary APA remedy and vacate that action.

## CONCLUSION

For the foregoing reasons and the reasons stated in Plaintiffs' motion, ECF 28, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for partial summary judgment on Counts I–IV and VI of Plaintiffs' amended complaint, or, in the alternative, Count VII. If the Court awards summary judgment on any of these counts, it may dismiss Count V (the arbitrary and capricious claim) without prejudice as prudentially moot.

Dated: September 17, 2026

Respectfully submitted,

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson (DC Bar No. 1016621)
Lynn D. Eisenberg (DC Bar No. 1017511)
Brian C. Rosen-Shaud (DC Bar No. 90042065)
Jacobson Lawyers Group PLLC
5100 Wisconsin Ave N.W., Suite 301
Washington, DC 20016
(301) 823-1148
dan@jacobsonlawyersgroup.com
lynn@jacobsonlawyersgroup.com
brian@jacobsonlawyersgroup.com

Benjamin L. Berwick (D.D.C. Bar No. MA0004)
Protect Democracy Project
15 Main Street, Suite 312
Watertown, MA 02472
Tel.: (202) 579-4582
ben.berwick@protectdemocracy.org

Cerin Lindgrensavage (DC Bar No. 1741602)
Jacek Pruski (DC Bar No. 888325144)
Protect Democracy Project
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Tel.: (202) 579-4582
cerin.lindgrensavage@protectdemocracy.org
jacek.pruski@protectdemocracy.org

Toby Merrill (D.D.C. Bar ID MA0006)+
Joshua Karsh (DC Bar No. 90035665)+*
Sharanya (Sai) Mohan (CA Bar No. 350675)*
Graham Provost (DC Bar No. 1780222)+
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
toby.merrill@publicrightsproject.org
joshua.karsh@publicrightsproject.org
sai.mohan@publicrightsproject.org
graham.provost@publicrightsproject.org

*Counsel for Nashville, Harris County, City of Columbus, El Paso County, and Travis County*

Eliza Sweren-Becker*
Lauren Miller Karalunas*
Derek Tisler*
Brennan Center for Justice at NYU School of Law
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
sweren-beckere@brennan.law.nyu.edu
millerl@brennan.law.nyu.edu
tislerd@brennan.law.nyu.edu

*Counsel for Harris County, City of Columbus, and Nashville*

The Metropolitan Government of Nashville and Davidson County

Tyler Chance Yarbro, #023553
Director of Law

John K. Whitaker, #039207*
Senior Counsel
Metropolitan Courthouse, Suite 108
Post Office Box 196300
Nashville, Tennessee 37219-6300
(615) 862-6341
john.whitaker@nashville.gov

*Counsel for Nashville*

Abbie Kamin
Harris County Attorney

Neal A. Sarkar (D.D.C. Bar ID TX0088)
First Assistant County Attorney
Daniel David Hu (TX Bar No. 10131415) #
Senior Counsel
Edward Swidriski (D.D.C. Bar ID TX0089)
Senior Assistant County Attorney
Office of the Harris County Attorney
1010 Lamar, 11th Floor
Houston, Texas 77002
(713) 274-5101
neal.sarkar@harriscountytx.gov
daniel.hu@harriscountytx.gov
edward.swidriski@harriscountytx.gov

*Counsel for Harris County*

Christina Sanchez #
El Paso County Attorney
TX Bar No. 24062984
Ch.sanchez@epcountytx.gov
Bernardo Rafael Cruz #
Assistant County Attorney
TX Bar No. 24109774
Office of the El Paso County Attorney
320 S. Campbell St., Suite 200
El Paso, TX 79901
Tel: 915-273-3247
b.cruz@epcountytx.gov

*Counsel for El Paso County*

DELIA GARZA
County Attorney, Travis County
P. O. Box 1748
Austin, Texas 78767
Telephone: (512) 854-9513
Facsimile: (512) 854-4808
By: *<u>/s/ Todd A. Clark*</u>*
TODD A. CLARK
State Bar No. 04298850
todd.clark@traviscountytx.gov

*Counsel for Travis County*

JOHN CREUZOT
DALLAS COUNTY CRIMINAL
DISTRICT ATTORNEY
/s/ Barbara S. Nicholas#
Assistant District Attorney
Texas State Bar No. 24032785
barbara.nicholas@dallascounty.org
*<u>/s/ Jason G. Schuette*</u>*
Assistant District Attorney
Texas State Bar No. 17827020
jason.schuette@dallas.county.org
Civil Division
Dallas County Records Building

500 Elm Street, Suite 6300
Dallas, Texas 75202
Telephone: 214.653.7358
Telecopier: 214.653.6149

*Counsel for Dallas County*

* Admitted pro hac vice
# Application for admission pro hac vice forthcoming
+ Admitted in listed states but not licensed to practice law in California.