**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTIES, TENNESSEE, *et al.*,
*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants*.

No. 1:26-cv-02886-AHA

Hon. Amir H. Ali

**DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

## INTRODUCTION

Defendants—the U.S. Department of Homeland Security ("DHS"); the Federal Emergency Management Agency ("FEMA"); Markwayne Mullin, in his official capacity as secretary of the U.S. Department of Homeland Security; Cameron Hamilton, in his official capacity as the FEMA administrator—respectfully move for a stay pending appeal of this Court's order vacating funding conditions included in DHS's fiscal year 2026 Homeland Security Grant Program ("HSGP") Notice of Funding Opportunity ("FY26 HSGP NOFO") and the 20% holdback requirement included as to those funds. *See* Order, ECF No. 43; Memorandum Opinion, ECF No. 42 ("Mem. Op"). As explained in greater detail below, Defendants are likely to succeed on their appeal of that decision because DHS has long recognized that election infrastructure is critical infrastructure and, in the HSGP statute, Congress directed FEMA to consider "threat[s] to critical infrastructure sectors" that include cyber threats, 6 U.S.C. § 608(b)(3), and "other types of threats determined relevant by the Administrator," *id.* § 608(b)(9), when allocating HSGP funding. The Election Security Conditions are intended to combat such threats. As such, the Court's contrary conclusions are erroneous, and Defendants have a substantial likelihood of success on appeal. Additionally, the equitable factors support a stay because the Court's order vacating the Election Security Conditions imposes irreparable harm on the Government and the public interest by preventing DHS and FEMA from effectuating statutory directives.

The Court should stay its order pending appeal. Defendants file this motion in accordance with Federal Rule of Appellate Procedure 8. If the Court does not grant the motion by October 26, 2026, Defendants plan to seek a stay pending appeal in the court of appeals and will inform the court of appeals of this Court's ruling when it issues.

## BACKGROUND

On September 28, 2026, this Court entered judgment for Plaintiffs on their claim that five Election Security Conditions contained in the FY26 HSGP NOFO exceeded statutory authority related to the HSGP. *See* Order; Mem. Op. The Court concluded that the relevant statute did not "give FEMA authority to use the possibility of grants to induce states or high-risk urban areas to carry out the federal government's preferred projects at their own expense." Mem. Op. 12–13. The Court further determined that the conditions, along with a requirement that FEMA would withhold 20% of funds until a grantee submitted proof of compliance with those conditions, were "not advanced to prepare for or respond to 'acts of terrorism,'" as is required in the statutes governing allocation of HSGP grants. *Id*. at 15 (citing 6 U.S.C. §§ 604(a), 605(a), and 608(a)(1)). The Court instead characterized those conditions as "address[ing] routine election administration decisions," not "the types of terrorist act threats contemplated by the statute[s]." *Id.* at 17–18. The Court further opined that even if the statute is ambiguous, the Court's conclusion was supported by the major questions doctrine, *see id.* at 18–19, and the Spending Clause, which the Court concluded would defeat Defendants' statutory interpretation, *see id.* at 19–20. Accordingly, the Court vacated only the Election Security Conditions in the NOFO and FEMA's ability to withhold 20% of funds until a grantee submits compliance with those conditions. *See id.* at 21–23; *see also* Order.

After consideration of the Court's memorandum opinion and decision, Defendants have appealed the Court's decision, ECF No. 44, and are filing this motion seeking a stay of that decision pending appeal. In keeping with Local Civil Rule 7(m), Defendants conferred with Plaintiffs via email and video call prior to filing this motion. Plaintiffs have indicated that they oppose the relief sought herein.

## LEGAL STANDARD

On a motion for a stay pending appeal, courts must consider four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Media Matters for Am. v. FTC*, No. 25-cv-1959, 2025 WL 2434196, at *1 (D.D.C. Aug. 22, 2025) (Sooknanan, J.) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). When the Government is a party, the factors regarding the public interest and any harm to the Government merge. *See Nken*, 556 U.S. at 435. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34.

## ARGUMENT

Taken together, the stay factors support staying the Court's entry of judgment pending the resolution of appeal of that order.

### I. Defendants are Likely to Prevail on the Merits.

As to the first factor, the chance of success on the merits must be "substantial." *Media Matters for America*, 2025 WL 2434196, at *1. "The court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, . . . may grant a stay even though its own approach may be contrary to [the] movant's view of the merits." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).

Defendants appreciate and understand that the Court rejected their merits arguments at the dispositive-motion stage. Nonetheless, Defendants respectfully submit that, for all the reasons articulated in their dispositive-motion briefing, Defendants are substantially likely to prevail on

appeal. For purposes of this motion, Defendants highlight why the Election Security Conditions are authorized by statute.

To begin, the HSGP statutory framework directs that, to determine HSGP funding priorities, the FEMA Administrator "shall consider, for each State or high-risk urban area," that potential grantee's "relative threat, vulnerability, and consequences from acts of terrorism." 6 U.S.C. § 608(a)(1); *see also id.* §§ 604(a) (same for UASI program); 605(a) (same for SHSG program). That risk determination includes a potential grantee's "degree of threat, vulnerability, and consequences related to critical infrastructure . . . or key resources identified by the Administrator." *Id.* § 608(a)(1)(D). The statute directs FEMA to consider nine "types of threat to critical infrastructure sectors," including cyber threats, *id*. § 608(b)(3), and "other types of threats determined relevant by the Administrator," *id.* § 608(b)(9).

As the Court acknowledged, election systems are critical infrastructure under the statute, *see* Mem. Op. 17; thus, FEMA must consider threats to election systems as it allocates HSGP funding. This includes cyber threats, which, as multiple sources corroborate, pose a serious threat to election systems. DHS's 2024 Homeland Threat Assessment noted that "[c]yber attackers likely will seek to exploit election-related networks and data, including state, local and political parties' networks and election officials' personal devices and email accounts." *See* ECF 36-4 at 19. A recent report by the Cybersecurity and Infrastructure Security Agency ("CISA") similarly detailed how that agency had identified cyber "vulnerabilities" that persisted for months or years in election-related software. *See* ECF 36-6 at 3. CISA's investigators were able to "gain[] full network control" of those voting systems within hours, demonstrating the election software remains a "soft target[] incapable of stopping even moderately skilled adversaries." *Id.* at 4.

Notwithstanding its determination that election software is vulnerable to cyber attacks—a "type[] of terrorist act threat[] contemplated by the statute," Mem. Op. 17–18—the Court concluded that the "specific election administration conditions listed in the NOFO" do not "connect to the types of physical or cyber threats to critical infrastructure" and "fall well outside of preparing for or responding to 'acts of terrorism.'" *Id.* at 15 (quoting 6 U.S.C. § 608(a)(1)). But each of the Election Security Conditions is self-evidently intended to protect against election infrastructure vulnerabilities. Submitting a transition plan (Condition 1) ensures that jurisdictions phase out vulnerable election systems that could be manipulated by bad actors. Post-election manual audits (Condition 2) and voter/ballot reconciliation (Condition 3) permit jurisdictions to confirm those systems have not been tampered with. Requiring verification of election workers' citizenship (Condition 5) similarly prevents malicious foreign actors from impersonating poll workers and tampering with the election software being used. As for Condition 4, which the Court singled out as particularly deficient, *see* Mem. Op. 18, verifying the citizenship of a jurisdiction's voter roll safeguards against risk that election machines will accept ballots from those unqualified to vote under federal law—including foreign actors. Each of these conditions addresses election infrastructure vulnerabilities susceptible to manipulation, not mere "routine election administration[.]" *Id.* at 17.

Further, the FEMA Administrator has determined that threats to election security and integrity are "relevant" to "threat[s] to critical infrastructure." 6 U.S.C. § 608(b). The Court resists this conclusion, ruling that threats to election integrity are not "similar in nature" to the threats enumerated in 6 U.S.C. § 608(b). Mem. Op. 16. The Court never identifies the common thread, if any, between the threats enumerated in § 608(b), or explains why threats to election security and integrity are dissimilar to those listed. Defendants submit that, like the enumerated threats, threats

to election integrity and security can have catastrophic results, including threatening Americans' faith in the electoral process and undermining their trust in the legitimacy of the elected government.

The Court cannot use the canon of *ejusdem generis*—the rule that a general term must be limited in meaning to the specific terms around it—to limit the threats that the Administrator can identify, pursuant to his discretionary authority, as relevant. *See* Mem. Op. 16. Again, the Court never explains what the common characteristic is between the enumerated threats. But, regardless, a canon of interpretation applies only where the text of a statute is ambiguous, and there is no ambiguity here. Section 608(b)(9)'s plain language includes all threats "determined relevant by the Administrator[,]" and that unambiguously broad language reflects the whole statutory context. *See Norfolk and W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991) (The canon of *ejusdem generis* "does not control, however, when the whole context dictates a difference conclusion."). In a statute that requires the Administrator to assess various threats, it makes sense that he can consider all types of threats to critical infrastructure and how those interact with the need to "prepare for, protect against, and respond to acts of terrorism." 6 U.S.C. § 608(a)(2); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227 (2008) ("[W]e do not woodenly apply limiting principles every time Congress includes a specific example along with a general phrase.").

The Court's fallback justifications for its ruling similarly fail. The major questions doctrine has no application here, nor does it "compel" the Court's result. Mem. Op. 19. The Supreme Court has applied that doctrine "in certain extraordinary cases," including "when an agency claims to discover in a long-extant statute an unheralded power." *Khalid v. TSA*, 172 F.4th 866, 875 (D.C. Cir. 2026) (cleaned up). There is nothing extraordinary about DHS and FEMA considering threats to critical infrastructure in the allocation of grants intended to protect critical infrastructure and

refusing to award grants in their entirety until grantees take steps to guard against those identified threats. Respectfully, the major questions doctrine does not apply every time a case "has substantial economic significance." Mem. Op. 19.

Moreover, the Spending Clause does not "raise serious doubts" as to the constitutionality of the NOFO conditions, and the Court was incorrect to rely on the canon of constitutional avoidance. *Id.* at 19–20. The Spending Clause is a grant of authority to *Congress* to spend money to promote the general welfare, not a restriction on how the Executive Branch makes discretionary decisions about how to allocate congressionally appropriated funds. *See* U.S. Const. art. I, § 8, cl. 1; *contra* Mem. Op. 20 n.4. Regardless, the Election Security Conditions do "bear some relationship to the purpose of the federal spending." Mem. Op. 20 (quoting *New York v. United States*, 505 U.S. 144, 167 (1992)). Acts of terrorism include acts that are "potentially destructive of critical infrastructure or key resources." 6 U.S.C. § 101(18). As explained above, not only is election infrastructure critical infrastructure, but the NOFO conditions are designed to directly address vulnerabilities in that infrastructure. That clear relationship to a form of terrorism expressly called out in the statute proves the conditions meet the relatedness prong. By suggesting otherwise, the Court has gone beyond the Supreme Court, which "has never struck down a condition of federal grants based on th[e] relatedness prong." *City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 (9th Cir. 2019). That is reason enough for the Court to stay its decision pending appeal.

As to the Court's finding that the HSGP statute does not authorize FEMA to "withhold counterterrorism grants until states and high-risk urban areas achieve policy objectives . . . at their own expense[,]" Mem. Op. 12-13, as outlined above, each of the five Election Security Conditions promotes the security and integrity of election infrastructure, and FEMA's withholding of 20% of

a grantee's HSGP award until the grantee certifies compliance with the conditions is entirely consistent with HSGP's purpose of protecting against destructive acts with widespread impacts on the Nation. Indeed, as outlined above, the conditions are aimed at protecting critical infrastructure from known threats. To dismiss grantee compliance with the conditions as merely intended to "achieve federal government policy" is to ignore the explicit goals of the HSGP statute, and to prevent FEMA from effectuating Congressional intent for spending. *See* 6 U.S.C. § 608(a)(1)(D), (b).

**II. The Remaining Stay Factors Weigh in Favor of a Stay.**

The Court's order vacating the Election Security Conditions necessarily imposes irreparable harm on the Government and the public interest. FEMA and, by extension, DHS, have an obligation to consider the vulnerability of critical infrastructure to terrorist threats when allocating HSGP funding. *See* 6 U.S.C. § 608(a) ("the Administrator shall consider"). The defendant agencies considered that vulnerability as it pertains to election infrastructure and determined that, for jurisdictions to receive the entirety of their HSGP awards, they needed to take certain protective steps. Congress intended the statute to work in this fashion, but this Court's decision prohibits that operation. The Supreme Court has recognized that the Government suffers irreparable injury "[a]ny time" it is prevented "by a court from effectuating statutes enacted by representatives of [the] people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. Of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)); *Trump v. Casa, Inc.*, 606 U.S. 831, 861 (2025) (citing *Maryland*, 567 U.S. at 1303).

In addition, absent a stay, HSGP funding will be disbursed to state grantees without attached conditions carefully designed to promote election security, thereby delaying critical

efforts to improve the integrity of the Nation's election infrastructure—efforts consistent with the HSGP's aim and plainly in the public interest. To say the least, election integrity is a concern of paramount public importance, and the public interest favors permitting the Government to protect election integrity through the imposition of conditions on public money that require jurisdictions to take commonsense steps to protect election infrastructure. This Court's decision stands in the way of that effort.

## CONCLUSION

The Court should stay its order entering judgment for Plaintiffs, ECF No. 43, pending the resolution of Defendants' appeal of that order to the D.C. Circuit.

Dated: October 22, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Director
Federal Programs Branch

*/s/ Alexandra L. Yeatts*
ALEXANDRA L. YEATTS (CA Bar No. 358762)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-5677
Email: Alexandra.Yeatts@usdoj.gov

*Counsel for Defendants*