**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, *et al.*;

Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*;

Defendants.

No. 1:26-cv-02886-AHA

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

## TABLE OF CONTENTS


INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 2

I. Defendants Have Not Shown Irreparable Harm ........ 2

II. The Equities Weigh Overwhelmingly Against a Stay ........ 6

III. Defendants Are Not Likely to Succeed on the Merits ........ 8

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al Otro Lado v. Wolf,*
952 F.3d 999 (9th Cir. 2020) ........ 4

*Am. Ctr. for Int'l Labor Solidarity v. Chavez-DeRemer*,
789 F. Supp. 3d 66 (D.D.C. 2025) ........ 11

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*,
65 F. Supp. 3d 134 (D.D.C. 2014) ........ 11

*City of Los Angeles v. Barr*,
929 F.3d 1163 (9th Cir. 2019) ........ 11

*City of Salem v. Mullin*,
839 F. Supp. 3d 1320 (D. Or. 2026) ........ 12

*Cnty. of Santa Clara v. Noem*,
815 F. Supp. 3d 979 (N.D. Cal. 2025) ........ 12

*Hirschfeld v. Board of Elections in City of New York,*
984 F.2d 35 (2d Cir. 1993) ........ 4

*Illinois v. FEMA*,
No. 25-cv-206, ECF No. 71 (D.R.I. Sept. 24, 2025) ........ 12

*Illinois v. FEMA*,
No. 26-cv-485 (D.R.I. Sept. 29, 2026) ........ 4

*KalshiEX LLC v. Commodity Futures Trading Comm'n*,
119 F.4th 58 (D.C. Cir. 2024) ........ 2, 3, 5

*Maryland v. King*,
567 U.S. 1301 (2012) ........ 5

*Memphis A. Philip Randolph Institute v. Hargett,*
977 F.3d 566, 568 (6th Cir. 2020) ........ 4

*People Not Politicians v. Onder*,
No. 26A388, 2026 WL 2883222 (U.S. Sept. 25, 2026) ........ 7, 8

*South Dakota v. Dole*,
483 U.S. 203 (1987) ........ 11, 12

**Statutes**

6 U.S.C.

§ 101(18) ........ 10

§ 604(a) ........ 12

§ 604(b)(2)(A)(i) ........ 9

§ 605(a) ........ 12

§ 608 ........ 2, 9

§ 608(a) ........ 9

§ 608(b) ........ 9, 10

Ohio Rev. Code § 3509.051(A)(1) ........ 3

Tenn. Code Ann. §§ 2-6-101(b), 2-6-102(a)(1) ........ 3

Tex. Elec. Code § 85.001(a), (c) ........ 3

**Other Authorities**

2026 NOFO, App. I: HSGP Allocations ........ 10

FEMA Information Bulletin
No. 587 (Oct. 7, 2026) ........ 3

## INTRODUCTION

Twenty-four days after this Court entered final judgment—after Defendants have implemented this Court's order, and after voting in the current election has begun in earnest across the nation—Defendants come to this Court demanding that it issue a stay pending appeal within two business days. Defendants provide no explanation or justification for their delay in seeking a stay or for the emergency timeline by which they demand a decision. There is no plausible explanation they could offer that would justify this litigation conduct.

Defendants' delay in seeking a stay is fatal to their claim of imminent irreparable harm, which alone provides a basis to deny their motion. If the Election Administration Conditions were necessary to protect against threats of *terrorism* to election infrastructure, which is the only cognizable threat for purposes of the Homeland Security Grant Program (HSGP), the government would not have waited nearly a month to seek a stay, after the election facing the purported threats has already begun. Delay aside, Defendants put forward no concrete evidence of imminent harm that will result absent a stay. They provide only vague generalities regarding "election integrity" and protecting "election infrastructure," ECF No. 45 ("Mot.") at 8–9, which falls far short of meeting their burden to justify the extraordinary relief of a stay pending appeal.

On the other side of the ledger, entering a stay and causing the conditions to spring back to life would impose immense harm on Plaintiffs and the public interest. Plaintiffs previously attested to the difficulties, if not impossibilities, of complying with certain conditions for the current elections, and those difficulties have only grown in the months since then. Imposing the conditions now would inject chaos into the ongoing election for those counties forced to comply. At best, it would substantially delay the receipt of critical counter-terrorism funds across the country, for those jurisdictions unable or unwilling to comply.

On the merits, Defendants provide no basis to second-guess this Court's legal conclusions. They effectively ignore this Court's holding that no statutory provision authorizes FEMA to impose unfunded policy mandates as a condition of receiving HSGP funds. And they continue to rely on a provision (6 U.S.C. § 608) that concerns only which jurisdictions FEMA should designate as eligible to receive HSGP awards and how FEMA should allocate the total pie of HSGP appropriations among awardees, neither of which the 20% holdback affects. The provision simply has no relevance to the Election Administration Conditions, and Defendants point to no other source of statutory authority to impose these conditions. There is none.

The Court should deny the stay pending appeal, and Plaintiffs respectfully submit that the Court should do so on whatever timetable is necessary for the Court to address the issues Defendants' motion raises, rather than the arbitrary timetable the government has demanded.

## LEGAL STANDARD

"A stay pending appeal is an extraordinary remedy." *KalshiEX LLC v. Commodity Futures Trading Comm'n*, 119 F.4th 58, 63 (D.C. Cir. 2024) (quotations omitted). "To obtain such exceptional relief, the stay applicant must (1) make a strong showing that it is likely to succeed on the merits; (2) demonstrate that it will be irreparably injured before the appeal concludes; (3) show that issuing a stay will not substantially injure the other parties interested in the proceeding; and (4) establish that the public interest favors a stay." *Id.* (cleaned up).

## ARGUMENT

Defendants here cannot meet any of the four stay factors, let alone all of them as required to obtain a stay pending appeal.

### I. Defendants Have Not Shown Irreparable Harm

Defendants' failure to establish irreparable harm is sufficient to deny their motion. The D.C. Circuit has made clear that "a showing of irreparable harm is a necessary prerequisite for a

stay." *KalshiEX*, 119 F.4th at 63-64. Thus, in *KalshiEX*, the court denied the government's request to stay a judgment vacating agency action, even though the merits question was "close and difficult," because the government's failure to demonstrate irreparable harm was fatal to its stay request. *Id.* The merits here are neither close nor difficult, but the same threshold defect defeats Defendants' motion.

Defendants' 24-day delay in seeking a stay belies any claim that they face imminent irreparable harm. If the Election Administration Conditions were necessary to protect against imminent threats of terrorism against election infrastructure, Defendants would not have waited nearly a month to seek a stay, with the November 3 general election date fast approaching. Indeed, during the time between this Court's final judgment and when they sought a stay, early voting began nationwide, including in the three states in which Plaintiffs are located. *See* Tex. Elec. Code § 85.001(a), (c) (early in-person voting began October 19); Tenn. Code Ann. §§ 2-6-101(b), 2-6-102(a)(1) (early voting began October 14); Ohio Rev. Code § 3509.051(A)(1) (early voting began October 6). As of today, more than 3.69 million votes have already been cast in these three states alone.[1] And during this time, FEMA issued guidance rescinding the conditions and holdback effective immediately. FEMA Information Bulletin No. 587 at 2-3 (Oct. 7, 2026) (attached as Exhibit A).

Defendants offer no explanation for their delay in seeking a stay, nor do they explain how their claim of irreparable harm is consistent with that delay or their actions during this time. They do not identify any intervening development explaining their decision to seek a stay now,

---

[1] Univ. of Florida, Election Lab, https://election.lab.ufl.edu/early-vote/2026-early-voting/ (reporting data from official state websites).

let alone a justification for demanding that this Court issue emergency relief within two business days of their belated request. *See* Mot. 1.

Courts have denied stays in comparable circumstances. In *Hirschfeld v. Board of Elections in City of New York*, the Second Circuit explained that an election board's four-week delay "severely undermines the Board's argument that absent a stay irreparable harm would result." 984 F.2d 35, 39 (2d Cir. 1993). Likewise, in *Memphis A. Philip Randolph Institute v. Hargett*, the Sixth Circuit denied a stay sought a month after an election injunction, finding "no substantial harm to defendants in continuing to comply with rules they are currently following." 977 F.3d 566, 568 (6th Cir. 2020). And in *Al Otro Lado v. Wolf*, the Ninth Circuit rejected the government's reliance on predictions rather than evidence of actual burdens after an injunction had operated for more than three weeks. 952 F.3d 999, 1007 (9th Cir. 2020). Defendants' unexplained delay and failure to identify harm from compliance warrant the same treatment here.

Delay aside, Defendants' own representations to the Court and their litigation conduct in the parallel States' lawsuit in the District of Rhode Island further demonstrate the lack of emergency. In the States' litigation challenging the same conditions, Defendants agreed on September 29 to extend the deadline for the plaintiff States and their subdivisions and instrumentalities to accept awards until December 15, 2026. Joint Mot. ¶ 3, *Illinois v. FEMA*, No. 26-cv-485 (D.R.I. Sept. 29, 2026), ECF No. 43 (attached as Exhibit C); *see* 9/2/2026 Tr. 18:13-17 (attached as Exhibit B). That agreement permits those States to await the outcome of litigation without accepting the challenged conditions for the current election. Why would FEMA allow nearly half the states in the country to wait until well after the current election to accept the conditions if they were truly necessary to protect election infrastructure from acts of terrorism? Even in this case, at the September 2 scheduling conference, government counsel

urged that the parties could "breathe a sigh of relief that there's not as much urgency as maybe it appears," citing the 60-day window available to accept awards. Ex. B, Tr. 16:12-17:4. Defendants do not reconcile those post-election timetables with their claims that immediate enforcement of the vacated conditions is essential to protect against imminent threats.

And given this backdrop, it is especially glaring that Defendants do not identify any specific, concrete harms that will result without a stay. *See* Mot. 4-5, 8-9. Defendants offer only general assertions about election security and reports describing cybersecurity vulnerabilities. *Id.* Those reports do not establish that leaving these particular funding conditions vacated during the appeal will likely cause irreparable injury. *KalshiEX* addressed the same distinction: although protecting election integrity is an important public interest, the government still had to supply a concrete basis for concluding that the asserted harms were likely to occur. 119 F.4th at 64-66. Defendants' explanation of why they consider the conditions beneficial does not establish the injury that will likely follow from their absence during appellate review (especially considering the representations and stipulations recounted above). That omission matters particularly because the judgment leaves FEMA's other election-security measures intact.

Defendants separately contend that interference with their asserted statutory authority itself establishes irreparable harm. Mot. 8. But that assumes the statute authorizes the imposition of the conditions, which it does not. Op. 17-18, 21. For that reason, *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers), does not help them. That case concerned a restriction on the operation of a DNA-collection statute, and the Chief Justice additionally identified concrete law-enforcement benefits lost through its suspension. *Id.* at 1301-04. Here, the judgment leaves the governing statutes intact and permits FEMA to continue assessing threats and administering counterterrorism grants.

Defendants have not shown that leaving the judgment in place during appellate review will cause irreparable injury. That failure alone requires denial of their motion.

## II. The Equities Weigh Overwhelmingly Against a Stay

Defendants barely raise any arguments supporting equities and public interest, primarily parroting their merits argument and stating that, absent a stay, funds will be "disbursed to state grantees without attached conditions carefully designed to promote election security" and that those conditions are "efforts consistent with the HSGP's aim and plainly in the public interest." Mot. 8-9. This argument fails for several reasons, including that the conditions clearly exceed FEMA's authority under the HSGP's statutory scheme, and they trample on core structural features of the Constitution, including that Congress has the power of the purse and States and their subdivisions have the power to administer elections. That alone suffices to find that the equities and public interest weigh against a stay.

And the equities tip sharply against a stay given the harm to Plaintiffs and the public administration of elections that would result from the immediate imposition of these conditions. In September, Plaintiffs explained the hardship that the conditions would cause so close to an election. At a time when counties were focused on preparing for upcoming elections, they would instead need to divert significant resources to complying with the Elections Conditions. *See, e.g.*, ECF 28-12, Limon-Mercado Decl. ¶18 (explaining that "even obtaining…the inputs for developing the transition plan would impose significant costs on" Travis County); ECF 28-15, Wise Decl. ¶¶ 10-16 (explaining that El Paso County currently complies with the reconciliation procedures and post-election manual audit required by Texas state law, and that the related Election Administration Conditions "would impose additional costs" and could cause the County to lose election workers, while transitioning to hand-marked paper ballots "would cost several million dollars" and require a 12-18 month process); *id.* ¶¶ 21-22 (explaining that, absent

additional funding for complying with the Election Administration Conditions, El Paso County "would need to reduce voting locations to find additional savings," meaning "voters have to wait in longer lines to cast their vote," and "would also expect to lose poll workers who find learning a new system and processes daunting" and "would also likely need to cut outreach programs, including naturalization ceremonies and voter deputy registrars, to save on costs").

Indeed, months ago, Plaintiff Counties made clear that they simply did not have time to implement the conditions—some of which would require significant changes to their elections processes—for the midterm elections. On September 1, Dallas County's Elections Administrator explained that if the County obtained access to the SAVE system and was directed by the Texas Secretary of State to review the citizenship status of registered voters and election workers, it would be "improbable" for the County to complete those checks within 120 days. ECF 28-3, Adams Decl. ¶ 18. Similarly, El Paso County's Elections Administrator stated that the "timing required" to use the SAVE system to verify the citizenship of election workers and employees of vendors, including a 30-day response period under state law, "could put" the elections department "well behind an already tight timeline" and "could put both the County and the vendor without enough workers on Election Day." Wise Decl. ¶ 19. Moreover, implementation of the post-election reconciliation and audit conditions would require significant changes to Counties' post-election procedures, some of which may be in contravention of state laws. *See, e.g.*, Hudspeth Decl. ¶ 6.; *Id.* ¶¶ 19–21; Wise Decl. ¶¶ 14–15.

Months later, these burdens have only grown and the ability to implement some of the conditions for the current election has gone from improbable to impossible. "The election is not merely upcoming; it has already started." *People Not Politicians v. Onder*, No. 26A388, 2026 WL 2883222, at *2 (U.S. Sept. 25, 2026) (preventing last-minute federal intervention in

election). Early in-person voting began in Tennessee nine days ago and in Texas four days ago; voters are already casting ballots and poll workers are already working the election. Poll workers and vendors have not been run through the SAVE database—no state law requires Counties to do so—and Defendants provide no grace period for complying with that condition if a stay of the judgment here is issued. The same is true for the conditions requiring post-election audits and ballot reconciliation, which would have to be done just weeks from now, without adequate staffing or resources in place to carry out these unfunded mandates. Indeed, FEMA's recent guidance implementing this Court's decision stated that "[i]f the Court's order is vacated or extinguished, the election administration conditions and 20% holdback will *immediately* become effective." Ex. A at 3 (emphasis added).

The Court should decline Defendants' invitation to "usher in electoral chaos" by granting a stay—and causing the conditions to immediately spring into effect—"in the midst of an ongoing election." *People Not Politicians*, 2026 WL 2883222, at *2.

## III. Defendants Are Not Likely to Succeed on the Merits

On the merits, Defendants offer nothing new to call into question this Court's conclusion that FEMA's imposition of the Election Administration Conditions exceeds its statutory authority in multiple independent ways.

Defendants offer no meaningful response to this Court's determination that "[t]he statute does not authorize FEMA to withhold counterterrorism grants until states and high-risk urban areas achieve policy objectives on their own dime," which is "exactly what FEMA did here." Op. 12–13. Defendants do not dispute the factual premise of the Court's holding—"that FEMA's rule requires the plaintiff counties and cities, or their states, to self-fund the various election administration reforms that the NOFO requires." *Id.* at 13. And Defendants do not point to any

specific statutory provision that authorizes FEMA to withhold HSGP funds unless state and local jurisdictions carry out certain policies using non-federal funds.

Defendants only argue that each of the conditions "promotes the security and integrity of election infrastructure," and is "consistent with HSGP's purpose of protecting against destructive acts," but that is non-responsive to the problem the Court identified. Federal agencies have no authority to take actions unauthorized by statute because they think the actions are consistent with a statute's general purpose. That is certainly the case for actions that impose mandates on states and their political subdivisions, and even more so in an area like elections that is constitutionally reserved for the states.

Defendants also ignore other aspects of the statutory scheme that are fatal to their case. They continue to rely on 6 U.S.C. § 608 as their primary source of statutory authority, but they continue to ignore that both § 608(a) and § 608(b) set forth criteria and factors for FEMA to consider only for two purposes: (1) designating high-risk urban areas eligible to receive grants, *see id.* § 604(b)(2)(A)(i); and (2) "[i]n *allocating* funds *among* States and high-risk urban areas," *id.* § 608(a); *see id.* § 608(b) (listing "types of threat" for FEMA to consider for purposes of § 608(a)). The types of threats listed in § 608(b) thus are relevant only in determining which local jurisdictions should be deemed high-risk urban areas eligible to receive awards, and how to allocate the total amount of money that Congress appropriated for the HSGP Program "among" the relevant states and local jurisdictions.

FEMA is not using the Election Administration Conditions for either of these purposes. FEMA has already determined the high-risk urban areas that are to receive awards with FY2026 funds, and FEMA has already decided the allocations of FY2026 funds among those areas and states; the allocations are set forth in precise dollar amounts for each state and high-risk urban

area in the 2026 NOFO. *See* 2026 NOFO, App. I: HSGP Allocations, at 69-75. Rather than using the conditions for either of those purposes, FEMA wants to use the conditions to hold back 20% of the funds that *have already been allocated* to states and high-risk urban areas. The list of threats in § 608(b) thus cannot be the statutory basis for imposing the conditions.

Even putting that aside, for the reasons this Court explained, the five Election Administration Conditions do not address the types of threats listed in § 608(b). *See* Op. 15–18. Defendants argue that the Court's opinion "never explains what the common characteristic is between the enumerated threats" and the conditions. Mot. 6. But the Court did explain: the enumerated threats all relate to potential "acts of terrorism," and the Election Administration Conditions do not. Op. 15.

Indeed, Defendants fail to grapple with the statute's expressly limited purpose of preventing, preparing for, and responding to acts of "terrorism," a statutorily defined term. 6 U.S.C. § 101(18). Defendants assert that "each of the Election Security Conditions is self-evidently intended to protect against election infrastructure vulnerabilities," but none of the ways that Defendants claim the conditions "protect against election infrastructure vulnerabilities" have to do with stopping or responding to acts of terrorism. *See* Mot. 5.

Moreover, for the vulnerabilities that Defendants describe, it is hardly "self evident" that the conditions protect against them. ECF No. 42 at 15. Defendants fail to cite any evidence—in their summary judgment filings or now—that substantiates the nexus between each Condition and the vulnerabilities Defendants identify. They certainly do not cite any evidence that these particular conditions, including all of their highly prescribed details that FEMA set forth in its implementing guidance, are tailored toward preventing or responding to terrorism. In court, parties must rely on evidence, not their own say so, and Defendants have no evidence to speak

of. *See Am. Ctr. for Int'l Labor Solidarity v. Chavez-DeRemer*, 789 F. Supp. 3d 66, 101 (D.D.C. 2025) ("A lawyer's argument . . . does not substitute for admissible evidence in support of or in defense against a summary judgment motion. Defendants' counsel's representations, therefore, cannot weigh in favor of defendants' motion for summary judgment.") (citing, *inter alia*, *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 65 F. Supp. 3d 134, 145 (D.D.C. 2014)).

In all events, Defendants do not dispute that they cannot show clear congressional authority to impose these conditions, where such clear authorization is necessary in the context of major questions. And they do not deny that whether Congress authorized FEMA to prescribe nationwide election procedures is a question of "vast economic and political significance." *Nat'l Fed'n of Indep. Bus. v. OSHA*, 595 U.S. 109, 117 (2022) (quotations omitted). But Defendants nonetheless assert that this case does not involve a major question. They remarkably claim that "[t]here is nothing extraordinary about" FEMA seeking to prescribe detailed election-administration procedures for every state and county in the nation. Mot. 6. To describe that as a "major question" is a major understatement.

Finally, Defendants argue the Court erred in invoking constitutional avoidance because (1) the Spending Clause limits Congress, not the Executive; (2) the conditions bear some relationship to critical infrastructure; and (3) the Supreme Court has never struck down a grant condition on relatedness grounds. Mot. 7. Each argument fails. First, as the Court recognized, the Executive's authority to condition federal funds is "[i]ncident" to Congress's spending power and is therefore bound by the same limits. Op. 20 n.4 (quoting *South Dakota v. Dole*, 483 U.S. 203, 206 (1987)); *see also City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 n.6 (9th Cir. 2019) (recognizing that "the addition of an agency middleman" neither "expands [n]or contracts Congress's power."). An agency cannot impose through grant conditions what Congress itself

could not. Second, Congress appropriated these funds to help recipients prevent and respond to "acts of terrorism," 6 U.S.C. §§ 604(a), 605(a). Congress did not appropriate funds to advance any and all policies that might plausibly promote "election integrity" by addressing purported "vulnerabilities" in election administration. Defendants' theory has no limiting principle: DHS could dictate education policy to schools or healthcare policy to hospitals merely by invoking infrastructure security. Third, the absence of a Supreme Court decision invalidating a condition for relatedness does not make the requirement meaningless; *Dole* upheld a drinking-age condition because it was "directly related to one of the main purposes for which highway funds are expended." 483 U.S. at 208. And lower courts have repeatedly enforced the relatedness requirement. *See, e.g.*, *Illinois v. FEMA*, No. 25-cv-206, ECF No. 71 at 38 (D.R.I. Sept. 24, 2025); *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d 979, 1036 (N.D. Cal. 2025); *City of Salem v. Mullin*, 839 F. Supp. 3d 1320, 1339–40 (D. Or. 2026).

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion for a stay pending appeal.

Dated: October 23, 2026

Respectfully submitted,

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson (DC Bar No. 1016621)
Lynn D. Eisenberg (DC Bar No. 1017511)
Brian C. Rosen-Shaud (DC Bar No. 90042065)
Jacobson Lawyers Group PLLC
5100 Wisconsin Ave N.W., Suite 301
Washington, DC 20016
(301) 823-1148
dan@jacobsonlawyersgroup.com
lynn@jacobsonlawyersgroup.com
brian@jacobsonlawyersgroup.com

Benjamin L. Berwick (D.D.C. Bar No. MA0004)
Protect Democracy Project

15 Main Street, Suite 312
Watertown, MA 02472
Tel.: (202) 579-4582
ben.berwick@protectdemocracy.org

Cerin Lindgrensavage (DC Bar No. 1741602)
Jacek Pruski (DC Bar No. 888325144)
Protect Democracy Project
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Tel.: (202) 579-4582
cerin.lindgrensavage@protectdemocracy.org
jacek.pruski@protectdemocracy.org

Toby Merrill (D.D.C. Bar ID MA0006)+
Joshua Karsh (DC Bar No. 90035665)+*
Sharanya (Sai) Mohan (CA Bar No. 350675)*
Graham Provost (DC Bar No. 1780222)+
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
toby.merrill@publicrightsproject.org
joshua.karsh@publicrightsproject.org
sai.mohan@publicrightsproject.org
graham.provost@publicrightsproject.org

*Counsel for Nashville, Harris County, City of Columbus, El Paso County, and Travis County*

Eliza Sweren-Becker*
Lauren Miller Karalunas*
Derek Tisler*
Brennan Center for Justice at NYU School of Law
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
sweren-beckere@brennan.law.nyu.edu
millerl@brennan.law.nyu.edu
tislerd@brennan.law.nyu.edu

*Counsel for Harris County, City of Columbus, and Nashville*

The Metropolitan Government of Nashville and Davidson County

Tyler Chance Yarbro, #023553
Director of Law

John K. Whitaker, #039207*
Senior Counsel
Metropolitan Courthouse, Suite 108
Post Office Box 196300
Nashville, Tennessee 37219-6300
(615) 862-6341
john.whitaker@nashville.gov

*Counsel for Nashville*

Abbie Kamin
Harris County Attorney

Neal A. Sarkar (D.D.C. Bar ID TX0088)
First Assistant County Attorney
Daniel David Hu (D.D.C. Bar ID TX0120 )
Senior Counsel
Edward Swidriski (D.D.C. Bar ID TX0089)
Senior Assistant County Attorney
Office of the Harris County Attorney
1010 Lamar, 11th Floor
Houston, Texas 77002
(713) 274-5101
neal.sarkar@harriscountytx.gov
daniel.hu@harriscountytx.gov
edward.swidriski@harriscountytx.gov

*Counsel for Harris County*

Christina Sanchez #
El Paso County Attorney
TX Bar No. 24062984
Ch.sanchez@epcountytx.gov
Bernardo Rafael Cruz #
Assistant County Attorney
TX Bar No. 24109774
Office of the El Paso County Attorney
320 S. Campbell St., Suite 200
El Paso, TX 79901
Tel: 915-273-3247
b.cruz@epcountytx.gov

*Counsel for El Paso County*

DELIA GARZA
County Attorney, Travis County
P. O. Box 1748
Austin, Texas 78767
Telephone: (512) 854-9513
Facsimile: (512) 854-4808
By: */s/ Todd A. Clark**
TODD A. CLARK
State Bar No. 04298850
todd.clark@traviscountytx.gov

*Counsel for Travis County*

JOHN CREUZOT
DALLAS COUNTY CRIMINAL
DISTRICT ATTORNEY
*/s/ Jason G. Schuette**
Assistant District Attorney
Texas State Bar No. 17827020
jason.schuette@dallascounty.org
Civil Division
Dallas County Records Building
500 Elm Street, Suite 6300
Dallas, Texas 75202
Telephone: 214.653.7358
Telecopier: 214.653.6149

*Counsel for Dallas County*

* Admitted pro hac vice
# Application for admission pro hac vice forthcoming
+ Admitted in listed states but not licensed to practice law in California.